HARRYETT H. KNOX ET AL V. BETTY KNOX LONG ET AL.

No. A-3871. Decided April 8, 1953.
Rehearing overruled May 6, 1953.
(257 S.W. 2nd Series, 289)

*Dan Moody,* of Austin, *Hurst & Burke,* of Longview, *Fulton & Hancock* and *Edwin M. Fulton,* all of Gilmer, for petitioners.

The trial court was without jurisdiction to vacate judgment of dismissal and reinstate cases after term ended. Neither did it have jurisdiction to make order requiring Mrs. Knox to appear and testify and upon her refusal to do so, deprive her of her defense. Hovey v. Elliott, 167 U.S. 409, 42 L.Ed. 215, 17 Sup. Ct. 841; Snowden v. Republic Supply Co., 239 S.W. 2d 201; Texas & N.O. Ry. Co. v. Burden, 146 Texas 109, 203 S.W. 2d 522.

*Harrington & Harrington,* of Longview, *Grimes & Grimes,* of Washington, N. C., *William A. McKenzie, Wynne & Wynne* and *Anugus G. Wynne,* all of Dallas, for respondent.

In response to petitioner's proposition cited Coleman v. Zapp, 105 Texas, 491, 151 S.W. 1040; Epperson v. Jones, 65 Texas 425; Wilson v. Wilson, 145 Texas 607, 201 S.W. 2d 226; Davis v. Pierce, 250 S. W. 2d 656.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

Respondent Betty Knox Long, the only child of W. C. Knox, deceased, joined by her husband, in her individual capacity, and as administratrix of the estate of W. C. Knox, deceased,

recovered a judgment in the District Court of Gregg County, Texas, against Harryett H. Knox, the widow of W. C. Knox, and the other petitioners, who are the children of Harryett H. Knox by a former marriage. Generally, respondent alleged that all of the property owned by petitioner Harryett H. Knox was community property belonging to respondent's father and Harryett, but held in the name of Harryett, in trust for the community estate. She also sued for certain described properties, the legal title to which was in the children of Harryett, but which respondent alleged such children held in trust for the community estate of her father and Harryett. Further facts will be stated in disposing of the contentions of the various parties in this court. The trial court's judgment was affirmed by the Court of Civil Appeals, 251 S.W. 2d 911, and we granted writ of error.

Petitioners' first point attacks the jurisdiction of the trial court to render the judgment herein because this case had been dismissed by the trial court at a term previous to the one at which this judgment was rendered. It is contended that the action of the trial court in reinstating this case upon the docket, and in setting aside the dismissal at a subsequent term without any bill of review having been filed, was null and void. Judge Earl Roberts, who was the judge during the early history of this litigation resigned his office and Honorable Fred Erisman was appointed to succeed Judge Roberts about May 1, 1950. An order was drawn in the District Clerk's office upon the minutes of the court, and this order was signed by Judge Erisman under date of August 8, 1950. This order was a blanket order of "dismissal for failure of the parties to prosecute" upon the court's own motion, and it listed 181 cases, giving numbers and styles of each case and the 146th case on the list was "20,688-B Betty Knox Long, et al v. Harryett H. Knox, et al". This order was signed at the end thereof by "Fred H. Erisman, Judge", etc. and dated August 8, 1950. That term of court ended September 2, 1950. On September 15, 1950 the court's attention was called to the fact that this cause was included in the order of August 8, 1950 as one of the cases dismissed by such order. The judge immediately, upon his own motion, entered an order correcting the order of August 8, 1950, reciting that the inclusion of this cause in the blanket order of dismissal was done inadvertently and through mistake in the office of the District Clerk, without the knowledge or direction of the court, and was included in this list of causes dismissed although "the court having specifically at that time directed the District Clerk

to omit such case from the list of cases being dismissed, the inclusion of such case within such list was a mere clerical error and was not the judgment or order of the Court." On September 29, 1950, after notice to all parties and a hearing had, the court entered another order reinstating this cause upon the docket of his court, and striking this cause from the list included in the order of August 8, 1950, and reciting mistake and facts as above. All parties are agreed that if the inclusion of this cause in the order of dismissal of August 8, 1950 was a clerical mistake, such mistake could be corrected as was done here, but that if its inclusion was a judicial mistake, the order could not be set aside as was done here, but a bill of review would have to be filed and acted on. We have no bill of review proceeding before us.

■ In the case of Coleman v. Zapp, et al, 105 Texas 491, 151 S.W. 1040, 1041, the Supreme Court, speaking through Chief Justice Phillips, held that a court has the inherent power to correct a judgment by entry nunc pro tunc so as to properly recite the effect of the court's judgment, and said:

"The judgment of a court is what the court pronounces. Its rendition is the judicial act by which the court settles and declares the decision of law upon the matters at issue. Its entry is a ministerial act by which an enduring evidence of the judicial act is afforded.

"The failure of the minute entry to correctly or fully recite what the court judicially determines does not annul the act of the court, which remains the judgment of the court notwithstanding its imperfect record. * * *

"Hence it is that from the earliest times the power of correcting or amending their records, by nunc pro tunc entry, so as to faithfully recite their action, has been possessed and exercised by the courts as an inherent right, independent of any statute, and in the absence of express provision, unaffected by limitation."

See also Chambers v. Hodges, 3 Texas 517, 529; Trammell v. Trammell, 25 Texas Supp. 261; 25 Tex. Jur. 424, *Judgments*, Sec. 57; Nevitt v. Wilson, 116 Texas 29, 285 S.W. 1079, 48 A. L. R. 355; McDonald, Texas Civil Practice, Vol. 4, p. 1326, Sec. 17.08; Rules 316 and 317, Vernon's Texas Rules of Civil Procedure.

■ The record established that the stack of 182 docket sheets were left on the judge's desk. They had stamped on them by

the clerk the entry "Dismissed for want of prosecution". That the judge signed all of the orders on the docket sheets without determining in advance that all such cases should and would be dismissed is made clear by his testimony as follows: "At that time, without looking through the docket sheets, I started sitting there and thumbing them up until I had signed through a whole group of them. It took two or three days to sign them and they were just signed intermittently." He testified further that he thereafter inquired of the clerk if any of the cases were active and should not be dismissed. At this point in the proceedings we think it may safely be said that no judgment of the court had yet been rendered in any of the 182 cases for it appears beyond dispute that although the docket entries had been signed the entries were provisional and the judge was still in control of all of them with no intention of permitting any of them to become judgments of the court until he first satisfied himself that none of the cases were active.

In response to the judge's inquiry the clerk looked through the files and called his attention to the fact that the Green case and this case were both active, whereupon "those two cases were taken out of the stack and were laid aside not to be dismissed". Thereafter all 182 docket sheets were delivered to the clerk's office. At this point in the proceedings we think these two things were established with certainty: (1) judgment had been rendered dismissing 180 cases; (2) judgment had not been rendered dismissing the Green case or this case. These conclusions find support both in the facts and in the law.

In Freeman on Judgments, 5th Ed., Vol. 1, Sec. 48, pp. 80 and 81, it is said that "the rendition of judgment is the pronouncement by the court of its conclusions and decision upon the matter submitted to it for adjudication" which "may be oral as well as written," and that a judgment is " 'rendered' when the decision is officially announced either orally in open court *or by memorandum filed with the clerk.*" One of the cases cited in support of the text is the case of Appeal of Bulkeley, 76 Conn. 454, 57 Atl. 112, 113, in which it is said: "A judgment is in fact rendered whenever the trial judge officially announces his decision in open court, or out of court signifies to the clerk, in his official capacity and for his official guidance—whether orally or by written memorandum—the sentence of the law pronounced by him in any cause. This pronouncement of the court it is incumbent upon the clerk to forthwith enter. The writing out of the judgment in the form of a judgment file, to be recorded

is a matter of subsequent clerical action. * * * Here is recognized a clear distinction not only between the judgment and the writing which is required to be made to evidence it, but also between the rendition of the judgment and the preparation of this writing at some subsequent time."

Thus it appears that when the judge satisfied himself that there was no further reason for withholding judgment in the 180 cases and delivered the signed written memoranda of dismissal in such cases to the clerk for such further clerical action as was necessary to the recordation thereof he had rendered judgment in such cases just as effectively as if he had made an oral pronouncement of dismissal in each case separately in open court. On the other hand, when the judge pulled the docket sheets of the Green case and this case out of the stack and laid them aside "not to be dismissed" before the stack was delivered to the clerk, he terminated the possibility that the delivery of the sheets in those two cases would constitute the rendition of judgment therein just as effectively as if he had run a line through the entries on such sheets.

■ It is our opinion that the testimony and circumstances in evidence clearly support a conclusion that the signed instrument was never intended by the judge, or the clerk, or any one else, to be, and it was not in fact, a rendition of judgment as to this or any other case. On the contrary, such evidence clearly supports the conclusion that the instrument was intended to be and was but a formal draft of the judgment theretofore rendered, a memorial or record of what theretofore had been done when the 180 docket sheet notations were signed and delivered to the clerk, into which the clerk, by mistake, inserted the number and style of this case. This was a clerical error in the entry of a judgment rather than a judicial error in the rendition of a judgment and all of the authorities in this state are agreed that such an error is subject to correction even after the end of the term on mere motion and notice. Coleman v. Zapp, supra; Rules 316 and 317, Vernon's Texas Rules of Civil Procedure.

This case is plainly distinguishable from the case of Love v. State Bank & Trust Co. of San Antonio, 126 Texas 591, 90 S.W. 2d 819. In the Love case the order signed was not prepared and signed as evidence of a judgment theretofore rendered in another case as was the order here. On the contrary, the opinion in the Love case recites that the order there signed by the trial court was prepared for that particular case, and the judge ren-

dered a judgment dismissing the cause. When signed by the judge it constituted both the judicial act of dismissal and evidence of that act. In this case, on the other hand, the judgment of dismissal which the formal order was intended to evidence did not involve this case at all. The trial judge testified "it was not my intention to dismiss the present case nor the Green case; both of which I had knowledge was actively pending on the docket. * * * I meant to leave them on the docket." The order which reinstated the cause after a hearing recites "that the inclusion of this suit in the blanket order of dismissal entered on August 8, 1950 was erroneously included * * * that the inclusion of such case by number and style was erroneous, a clerical mistake and misrecital within a decree or order of the court and was never intended to be dismissed, and should be now corrected." In the Love case the order entered was the judgment the court had pronounced, whereas in the case at bar the order entered was the exact reverse of the judgment actually pronounced by the court. In this case the entry was clearly a clerical mistake.

■ Petitioners' third, fourth, fifth and sixth points all urge error to the action of the trial court in holding that Harryett H. Knox did not show good cause for failure to give her oral deposition, and the subsequent action of the trial court in denying to Harryett H. Knox the right to present her defenses upon the trial of the case.

After suit was filed in June, 1947, the record shows that beginning in September, 1947, there were twelve separate notices of intention and request for a commission to take the oral deposition of Harryett H. Knox, in order to procure her testimony in this cause. In addition, on March 18, 1949, respondents filed a pleading asking for a bill of discovery and order for Harryett H. Knox to appear in court and submit to examination. Upon this petition, Judge Earl Roberts, the then presiding judge of the court wherein this cause was pending, after a hearing with defendants' counsel present, entered an order commanding Mrs. Knox to appear before him at Longview, April 11, 1949 at 10:00 a. m., to submit to examination and to bring certain written instruments with her. In May, 1949, the attorneys for Mrs. Knox, in answer to an application for commisison to take Mrs. Knox's oral deposition filed April, 1949, filed an instrument pointing out that Dallas, Texas, where the application stated Mrs. Knox's oral deposition was to be taken, was more than 100 miles from Longview, where the litigation was pend-

ing, and the petitioners demanded the deposition of Mrs. Knox to be taken on written interrogatories "as provided by the Rules of Civil Procedure", (evidently referring to Rule 201). In response to this the respondents filed a motion for the court to enter an order for Mrs. Knox's oral deposition to be taken in Dallas, Texas, during the week of May 23, 1949. This application recites that notice and subpoena have regularly been served on Mrs. Knox. The record is not clear as to just what happened, except that Mrs. Knox did not appear as commanded. The cause was appealed to the Court of Civil Appeals and during pendency of the appeal nothing further was done in regard to taking her deposition.

Beginning in August, 1950 attempts were resumed to take Mrs. Knox's deposition, but without success. On October 31, 1950, upon written application of respondents wherein the various attempts theretofore made were set out, and the unsuccessful results being also set out, Honorable Fred Erisman entered his order, after notice and hearing, reciting that this is the character of case where "plaintiffs are entitled to have the oral deposition of Harryett H. Knox," to best serve the ends of justice and hasten trial of this cause which then had been pending more than three years, and permitting respondents to take Mrs. Knox's oral deposition in Dallas County, Texas, where she was then residing. Upon due notice, the date of taking her deposition was set as December 14, 1950; January 5, 1951; February 5, 1951; February 10, 1951 and March 24, 1951. A commission was duly issued on the taking for January 5, 1951, and was returned by the notary unexecuted because Mrs. Knox did not appear, nor did her attorney, but the attorney sent a telegram that Mrs. Knox's doctor advised said attorney she was unable to appear on account of illness. On January 29, 1951, respondents filed another petition for a bill of discovery, which was set for hearing by Judge Erisman on February 5, 1951 at 10:00 a. m. Mrs. Knox filed an answer to this application in which she attacked the jurisdiction of the court to enter any order; attacked that portion of Rule 202 relative to depriving a party of his defense for failure to appear, as violative of Section 19 of Article I of the Texas Constitution and the fifth and fourteenth amendments of the United States Constitution; alleging she had good cause for not appearing to give her deposition because "for a long time prior thereto (date of taking of depositions) she was too ill, and still is too ill to appear and give her deposition" and attached a doctor's certificates to such effect. On February 5, 1951, the court, after a hearing, all parties

being represented by their counsel, ordered Mrs. Knox to appear in the district court room of Gregg County, Texas, on February 10, 1951 at 9:00 a.m. for examination as in ordinary trials, and further ordered her to produce for such hearing certain documents, and directed that a copy of his order be mailed to Mrs. Knox at her Dallas address, and copies mailed to her attorneys. She never did appear. The excuse offered by her for not appearing was that she was ill and unable to appear. Notices of all these proceedings were served on her attorney of record, and efforts were made to serve her, and there was evidence in the record to sustain the trial court's finding that she was evading service and refusing to appear for her deposition to be taken.

On March 13, 1951, respondents filed a motion setting out the failure of Mrs. Knox to appear and give her deposition or to obey the orders of the court to appear for examination, and asked that she "not be permitted to present her defenses or her claim in this law suit." On March 19, 1951 the court, after a hearing with counsel present, entered its order for her to appear before the court at Longview, Texas, on March 24, 1951 at 9:00 a. m., "and upon her failure or refusal to appear before the court and give such deposition, she shall be in default under Rule 202 of the Rules of Civil Procedure of the State of Texas and under the rules governing the trial of civil cases in this court, and she shall thereupon be deprived in this cause of the right to present her ground of defense or relief in this cause." Mrs. Knox answered this motion and insisted that the trial court had no jurisdiction to order her to appear because this case had been dismissed and not legally reinstated; that the court had no authority to issue such order; and sought to justify her refusal to appear in obedience to previous orders of the court because (1) she had been ill at the times she was ordered to appear and (2) the court never had the authority or power to order her to appear and give her deposition, and all such orders were null and void; and (3) that she is too ill to appear on March 24 as ordered by the court. On March 24, 1951, the court, after a hearing, attorneys for all parties being present, entered its order finding that Mrs. Knox "has refused without cause to appear and give her depositions, to obey the orders of this court, to appear under the Rules of Civil Procedure governing discovery, and has flouted the orders and judgments of this court." The court in the same order denied Mrs. Knox the right "to present her grounds for relief or her defenses in this cause" and ordered the cause to proceed to trial on the day set. Attached to Mrs. Knox's motion of March 24, 1951, to set aside

the court's order of March 19, 1951, directing Mrs. Knox to appear, or have her right to defend taken away from her, were affidavits of two physicians. One, a psychiatrist, states in his affidavit that Mrs. Knox is suffering from dementia praecox, a mental illness of long duration, and that she was considered mentally incompetent and that her testimony would be wholly incompetent and unreliable and to require her appearance in court would be very injurious to her health. The other doctor was Mrs. Knox's family physician, and he too stated she did not have the mental capacity to testify, and that her physical condition was bad, and to cause her to appear and testify might cause a mental and physical breakdown. Upon this hearing before the court, a local doctor, who had made no examination of Mrs. Knox, testified that, in his opinion, nothing stated in either, or both, of the above affidavits was sufficient to prevent Mrs. Knox from appearing and testifying. After the hearing on March 24, 1951, the court overruled the motion to vacate the judgment of March 19, 1951. On March 28, 1951, this cause came on for trial and was on trial for three days. On April 21, 1951 judgment was rendered by default against Harryett H. Knox for an undivided one-half interest in and to certain properties, and against W. C. Holcomb (Mrs. Knox's son and a party defendant and one of the petitioners) on answers by the jury to certain issues submitted by the court, for an undivided one-half interest in the Dallas residence, record title to which stood in the name of W. C. Holcomb; also a money judgment for one-half interest in certain oil runs and leasehold interests. Petitioners filed motion for new trial and hearing was had on the court's action of March 24, 1951, depriving Mrs. Knox of her defenses, and on Mrs. Knox's physical and mental condition, and the motion was overruled.

Under Rule 201, Vernon's Texas Rules of Civil Procedure, the court had a right to enter an order requiring Mrs. Knox to give her oral deposition, even though she resided more than 100 miles distant from the court where the suit was pending. The last clause of that rule provides that "the judge or court before whom said suit is pending" shall have the right, upon proper application, after notice, to direct depositions to be taken otherwise than upon commission and written interrogatories. Ex Parte Stiles, 136 Texas 211, 150 S.W. 2d 234. This the court did on two or more separate and distinct occasions.

■ Rule 202, Vernon's Texas Rules of Civil Procedure, provides for taking oral depositions of a witness, and further provides

that where the witness is a party to the suit and fails to appear in answer to the subpoena for his appearance, "except for good cause shown", such party shall not be permitted to present his grounds for relief or his defenses. The rule further provides that the deposition must be taken in the county of the residence of the witness. This rule has not been construed by this court since its passage. However, the Federal courts have similar rules. Rules 33 and 37, Federal Rules of Civil Procedure, 28 U. S. C. A. The provisions of Federal Rule 37 have been construed as valid, and orders of court refusing to allow a party who would not answer and give his deposition, to support his designated defenses or prohibiting him from introducing testimony, have been upheld. Michigan Window Cleaning Co. v. Martino, 6th Cir., 173 F. 2d 466 (1-4); Fisher v. Underwriters at Lloyds London, et al, 7th Cir., 115 F. 2d 641 (5). A judgment dismissing plaintiff's suit because of a failure to appear and give his deposition was sustained under Federal Rule 37(d) in the case of Collins v. Wayland, 9th Cir., 139 F. 2d 677. A default judgment against a corporation which failed, without good cause, to produce its officers, books and records for examination, was sustained under an Arkansas statute providing for such procedure. The attack made on the statute as being in violation of the fifth and fourteenth amendments to the United States Constitution, was overruled. Hammond Packing Co. v. State of Ark., 212 U.S. 322, 29 Sup. Ct. 370, 53 L. Ed. 530, 544. As said in the Martino case, supra, "much has been left to the discretion of the court" in the determination of whether a party should be deprived of his defenses. An abuse of the court's discretion can be overturned by an appellate court. Under the facts in this case, we do not think the trial court abused his discretion in entering the order, Hickman v. Taylor, 329 U. S. 495, 91 L. Ed. 451, 67 S. Ct. 385 and annotations; Ann. 144 A. L. R. 368. The effect of such order was not to give respondents a default judgment against Mrs. Knox. Such order did not relieve the plaintiffs of the burden of proving their case.

Our Rule 202, as it now exists, is drawn so as to have the same effect as Federal Rule 37(d), but it is significant that the penalty provision of that rule that the court may "enter a judgment by default" against a party who has failed to appear has been omitted from our Rule 202.

■ In addition to the Federal rules above referred to, many of the states have similar provisions. Our Rule 202, after providing procedure for taking the oral deposition of any witness continues

with regard to a party to the litigation, "* * * provided that where the witness is a party to the suit with an attorney of record, service of the subpoena in such case may be made upon the attorney representing the witness, and if the witness fails to appear in answer to the subpoena, except for good cause shown, such party shall not be permitted to present his grounds for relief or his defenses." Under similar statutes, or rules, it has been held that the trial court may enter a judgment against a disobedient plaintiff by a dismissal or nonsuit of plaintiff's cause of action; as to a disobedient defendant it is held that the court may strike his pleadings, but that a default judgment cannot be entered in the absence of an express statute or rule so authorizing, Annotation 144 A. L. R. 372, 388, where the subject is thoroughly discussed. Clearly our rule would allow the court to dismiss a disobedient plaintiff's suit. Should a different rule be applied to a disobedient defendant? We think not. Both parties should be treated alike. In the case of a disobedient defendant where answer on the merits of the case has been stricken, a default judgment may not be taken, but the plaintiff must discharge his burden of showing his right to a recovery. Defendant's counsel can be present and cross-examine plaintiff's witnesses so as to show that plaintiff is not entitled to any recovery. Snowden v. Republic Supply Co., Texas Civ. App., 239 S.W. 2d 201, writ refused, n.r.e. For the error of the trial court in rendering judgment against Mrs. Knox by default, this cause will have to be reversed and remanded.

■ Upon the retrial of this cause, Mrs. Knox should be afforded the opportunity to give her deposition and be examined by the plaintiff. If she should continue her refusal to appear and give her deposition, the court may, after a hearing, and unless good cause is shown by Mrs. Knox for her refusal, again prevent her from offering any defenses. Fisher v. Lord, 7th Cir., 125 F. 2d 117; Socha v. Webber, D.C., 11 Fed. Rules Dec. 124.

■ Petitioners' eighth and ninth points complain of the action of the trial court in giving judgment in favor of respondents for an interest in the house and lot in Dallas. These assignments must be sustained. The deed to the property was made to W. C. Holcomb at the request of W. C. Knox and Harryett H. Knox. The deed recites a contractual consideration. Mrs. Long stands in privity with her father, W. C. Knox; therefore, parol evidence is not admissible to show that the title to the Dallas property is different from that shown in the deed. Kidd v. Young, 144 Texas 322, 190 S.W. 2d 65; Nye v. Bradford, 144 Texas 618, 193

S.W. 2d 165, 169 A. L. R. 1; Goldberg v. Zellner, Texas Com. App., 235 S.W. 870; Russell v. Russell, 132 Texas 73, 120 S.W. 2d 793. There are no allegations of fraud, accident or mistake with regard to the execution or recitals in the deed. As to the furniture in the house in Dallas and other personal property alleged to be community property of Mr. and Mrs. Knox, if the evidence is the same on another trial, Mrs. Long would be entitled to recover whatever community interest in this property that she can show her father, W. C. Knox, owned at the time of his death. In the event this case comes on for trial again, with Mrs. Knox denied her right to make defense because of her failure to appear and give her deposition, she could not plead and urge the statute of limitations as a bar to Mrs. Long's claims, for this is an affirmative defense. There was evidence that would justify a jury finding that community funds of Mr. and Mrs. Knox paid off certain indebtedness and taxes on the Dallas property, and that these payments were made by virtue of an agreement between W. C. Holcomb and Mr. and Mrs. Knox. These matters were properly submitted to the jury for their determination of the facts. Mrs. Long is entitled to recover for one-half of all sums of money expended by the community in payment of W. C. Holcomb's debts and taxes on this property, which she may be able to establish by competent proof, subject to all legal defenses which W. C. Holcomb may have which will defeat her claims.

Petitioners have additional assignments of error, most of which complain of the action of the trial court in admitting documentary and oral evidence. These rulings of the trial court arose by virtue of the development of the trial of this cause, under the circumstances unfolding therein, and on another trial the situation most likely will be different; therefore, we refrain from discussing these assignments. The trial court can apply the well known and well established rules of evidence to each particular situation as it arises. All other assignments of the petitioners' are overruled.

The judgments of both courts below are reversed and this cause is remanded to the trial court for a retrial consistent with our opinion herein.

Opinion delivered April 8, 1953.

Associate Justices Smedley and Garwood dissenting.

MR. JUSTICE GARWOOD, dissenting.

I agree with the result reached by the court to the extent that the judgments below are reversed. But, in my opinion, we should have sustained the position of the dissenting opinion of Judge Lincoln below and have thus ordered the cause stricken from the docket of the trial court, relegating our respondent, Betty Knox Long, to her rights under bill of review. Our contrary holding seems yet another instance of the old adage that "hard cases make had law." We actually overrule our own decision in Love v. State Bank & Trust Co., 126 Texas 591, 90 S. W. 2d. 819, while purporting to uphold it; and, though the veracity, good faith and conscientious diligence of the trial judge in the instant case cannot be doubted, our holding henceforward subjects erstwhile clear and reliable court records to the undesirable hazard of meaning only what the judge who signed them later recalls to have been his intent at the time.

Here we have a duly signed docket entry that the case was dismissed on August 8th., without any written change thereof until over a month later and after expiration of the term of court. We also have a formal decree signed by the judge as of August 8th. to the same effect as the docket entry. All this is held for naught upon the subsequent recollection of the judge that he did not intend to do what his own signature thus twice attests that he did do and what no substantially contemporaneous written record of any kind suggests that he did not do. We treat a solemn judicial document in a manner, which in the case of an ordinary deed of conveyance, would be deemed violence.

While in particular cases there is a not unnatural disposition to go far in order to avoid holding a party to unpleasant consequences of a blameless oversight, yet this indulgence is just what we refused to allow ourselves in the Love case, supra, which no one appears to criticize. There the judge dismissed Mr. Love's suit evidently on the strength of misinformation from the clerk to the effect that the suit was an inactive one. He was apparently conscious of the name and number of the case but unconscious of the equally important identifying fact that it was an active case. No doubt the error there was doubly "clerical" in the sense that the clerk also prepared the dismissal decree, but the decree and the error it embodied were held to be a judicial act, subject to correction after the term by bill of review only. The decree was held not to be a mere erroneous entry, for the reason that no previous rendition of judgment had been made in the case, and the decree was thus both a rendition and an entry, which concededly is possible. The test of

whether a written judgment is or is not a rendition, as distinguished from a mere entry, was held to be—"was there an actual rendition previously made?" If not, the written judgment is the rendition, as well as the entry.

This court would now say—although no party to the litigation has so contended—that the test of what is a rendition is not that applied in the Love decision, but what the judge recollects about whether he "meant" a rendition or merely an entry —although admittedly the only previous rendition which might exist was in a different case (or cases) with a different name and number. Now if, in the instant case, the judge had but read aloud in court his decree of August 8th. and forthwith signed it, few would deny that he then rendered and entered judgment dismissing the instant case. The fact that he had theretofore rendered, but not entered, judgment in the other cases included in the same decree would not be deemed material, because, as to the instant case, we would have an oral pronouncement of judgment followed by a written one or entry. We would not consider the intention of the judge not to render judgment in the case, because he obviously did render it, whether he meant to or not. Yet there is no substantial difference between such a situation and that before us. Surely a judge is presumed to know the content of what he signs, just as a grantor is presumed to know the content of his deed, so that his signing of it is the same as if he first spoke it and then signed it. In the latter instance the chance of misapprehension is doubtless less, but it is far from wholly removed, because a judge's "consciousness" of the indentity of a particular case depends often enough on something about it other than the name and number. He may read or speak the latter and still be thinking of a different case altogether. (Indeed, the proof does not suggest that the judge did not read his decree of August 8th before signing it, but merely that he had "no conscious intention of dismissing this particular case" thereby. Certainly he was conscious that the decree listed many cases and stated the dismissal of every one so listed). The mere fact that the decree was a writing and that all entries are writings, obviously does not mean that the decree is presumptively only an entry of some previous rendition. Certainly there is nothing impossible, or even improbable, about a judge at one moment rendering an oral dismissal of 180 cases, later concluding in his mind to dismiss yet another, and still later signing a decree, which is but an entry as to the 180 cases yet both a rendition and entry as to the 181st. Let us, for example, take the further hypothesis that in the instant case we

had, not one decree covering 181 cases, including the instant case, but 181 separate decrees, including one pertaining only to the instant case. Would the court then say that the Love case did not apply? Would we say that the separate decree dismissing the instant case was but an erroneous entry of dismissals theretofore rendered in the other cases, and that, as to the instant case, which it purported to dismiss, it had no effect at all? I greatly doubt that we would. Yet there is clearly no substantial difference between the two situations. It is hard for me to see how a decree, which contains only one reference to case A and thereby correctly enters the prior rendition made in case A, can yet be, as the court says it is, an erroneous entry of that identical rendition. The inclusion in the decree of a provision regarding case B may have been an oversight, which would not have happened except for the judge's intent to write an entry concerning case A, but it still is not an erroneous entry of a judgment concerning case A, because it correctly reflects that judgment. It is not a mere entry in case B because there was no prior rendition to enter in case B. So the reference to case B. is either a combined rendition and entry in case B or it is simply nothing at all—though it clearly purports to be a judgment in case B and is signed by the judge, just as in the Love case.

As before stated, the result of the court's holding in this suit is that an erstwhile written rendition of judgment may always be impeached by the judge later recalling that he never had the particular case in mind but really meant to enter judgment already rendered in some other case. If the rendition were oral, of course, it would be otherwise, because an oral judgment cannot be said to be an entry and so can only be considered the rendition that it is. The holding therefore brings about the peculiar situation that a written decree, which is the most solemn and heretofore most reliable form of rendering judgment, is actually less reliable than an oral pronouncement.

One may also on the evidence question the major premise of the court—that the trial judge, prior to the decree, actually *rendered* judgment dismising 181 cases, excluding the instant case. So far as the testimony discloses, the only words used that were appropriate to a judgment were the docket entries, and as before stated, these were exactly the same on the sheet corresponding to the instant case as on the others, without any written indication until over a month later that they were to be considered differently. The evidence does suggest that the formal order or decree above discussed was not executed until some

undetermined but very brief period after the docket entries were all signed and after the two sheets corresponding to the instant case and the "Green case" were separated from the others on the judge's desk and all of the sheets picked up and taken off by the clerk. But the evidence does not disclose the date on which the decree was actually signed (it begins "On this the 8th day of August" and the copy in the transcript bears the notation that it was both "entered" and "recorded" on that date). The evidence suggests uncertainty as to exactly when or how the date of August 8th got on the docket entries and does not state the date on which the docket sheets were segregated on the desk and taken away. Out of this confusing evidence of circumstances which all appear to have occurred within a very brief period of time, for us to reconstruct (a) an oral type of rendition of judgment dismissing all of the cases except the instant one and (b) a subsequent entry consisting of the formal decree, appears to me quite artificial. The judge was not asked about when he rendered or meant to render judgment, but only whether he ever intended to render a judgment in this particular case. Mindful that our decision is a precedent for the future, I think the more safe and sensible way to resolve such a situation is to look, not to the later recollection of the judge about his real intentions and to the single and inconclusive act of separating papers on a desk, but to the written records purportedly made at the time, which alone purport to reflect in approprite form an act of judgment and manifest in so many words a dismissal on August 8th of all the causes concerned, including the instant suit. In other words, we should conclude—and the conclusion is not clearly opposed by anything in the evidence—that the only act of judgment ever performed was the signing of the written decree of August 8th. Such a conclusion, of course, brings the case squarely within the Love decision, even if the latter should not otherwise apply.

Opinion delivered May 6, 1953.