**TEXAS LIFE INSURANCE COMPANY,**
Appellant,

v.

**TEXAS BUILDING COMPANY et al.,**
Appellees.

No. 15846.

Court of Civil Appeals of Texas.
Fort Worth.
Nov. 1, 1957.

Homa S. Hill, Fort Worth, A. D. Mabray, Waco, for appellant.

Borden & Hand, Weatherford, for appellees Edward D. Matlock et ux.

Simon & Ratliff, Fort Worth, for appellee Texas Bldg. Co.

Richard Owens, Fort Worth, for appellees T. J. Bettes Co. and Lynn Institution for Savings.

MASSEY, Chief Justice.

From a judgment in denial of appellant's right to establish its purported lien on certain real estate as a first and superior lien, for its foreclosure, and for the removal of cloud cast upon title thereto by other instruments of conveyance and lien, it brings an appeal. Appellees moved to dismiss the appeal on the ground that the question had become moot, which motion we have heretofore overruled.

Judgment affirmed.

The property in question was a certain lot in a subdivision of the City of Weatherford, Texas, which, along with other lots, comprised a part of a "speculative" residential addition promoted by two corporations, Nu-Homes, Inc., and Texas Building Company. As is customary to such enterprises, Nu-Homes, Inc., and Texas Building Company needed funds. In obtaining the funds, the lots on which the houses sought to be built and sold were tendered as security. Arrangements for the financing underwent certain changes so that certain groupings of lots were financed by different lending agencies. The appellant advanced to Texas Building Company an amount, which we will assume was at all material times $42,000.00, obtaining a lien secured by a deed of trust on a grouping of lots. This lien did not include the lot in controversy in this suit. At the time, the title thereto was in Nu-Homes, Inc., and the first lien on such lot was held by the Empire Investment Corporation, which is not a party to this suit.

As of October 6, 1954, the $42,000 debt was past due, though payment had been requested. There was a discussion on the part of a representative of the appellant and the debtor at the time, Texas Building Company, culminating in the furnishing of additional collateral to secure the indebtedness owing and represented by notes. This additional collateral was in the form of a deed of trust, subordinate and inferior to liens already against the subject property, dated January 20, 1955 (and placed of record on February 9, 1955) upon the lot in question, as well as upon other real estate. The deed of trust was executed by Texas Building Company to trustee for appellant. It is to be noted that a provision thereof was as follows: "It is further agreed that, while above indebtedness and this Deed of Trust securing same remains secondary to any aforementioned recorded prior liens on the above described properties in the Country Club Heights Addition to the City of

Weatherford, Texas, as described under Tract 1 hereof, for each $400.00 payment made by Grantor herein to said Texas Life Insurance Company, then said Company will execute and deliver to Grantor a partial release of this lien on any one said lot in said addition as designated by Grantor; and that after all said prior indebtednesses and liens on said properties have been paid off and released, then the amount required to be paid by Grantor to said Texas Life Insurance Company for partial release on any one said lot in said Addition, covered by this deed of trust, shall be $1,000.00, instead of $400.00."

The indebtedness heretofore mentioned was not affected through any written procedure pursuant to the transaction. In other words, the notes evidencing the $42,000 indebtedness were not renewed or extended. The record does reflect that the appellant ceased to insist upon a payment upon the indebtedness, at least temporarily.

Appellant did not make any investigation of the premises in question as of the time the deed of trust was delivered or dated. Its representative had driven by the premises some two months prior thereto and had seen the house located on the lot, but had not observed anything to cause him to believe that there was an occupant. He had not attempted to look inside the house to see if there was any indication of occupancy. Appellant first discovered that the premises were occupied when they had a supplemental abstract of the subdivision made, in which a deed was discovered recorded to Mr. and Mrs. Edward Matlock, appellees in this case. The grantor in the deed was Nu-Homes, Inc. Prior to such time, appellant had not made inquiry of the grantor in the deed of trust about whether the premises were occupied, by whom, or under what right.

Proof introduced in behalf of the appellees, at least as to the appellees who, during the course of the trial, were interested in contesting the suit of the appellant, established that the Matlocks moved into the house on the lot in question on or about September 6, 1954. A few days prior to such date, Mr. Matlock had orally contracted with a Mr. TenEyck, an agent for Nu-Homes, Inc., (as the owner) for the purchase of the property. He had delivered some consideration in the form of cash prior to the time he moved in. The contract was reduced to writing on November 25, 1954. Later, by deed dated January 25, 1955 (entered of record on March 7, 1955) Nu-Homes, Inc., purportedly conveyed to the Matlocks the title thereto. Over a year later, by deed dated April 13, 1956 (entered of record on April 19, 1956) he received a warranty deed from Texas Building Company. On date of January 25, 1955, the Matlocks executed a deed of trust to trustee for T. J. Bettes Company, securing indebtedness of $7,200 advanced upon the purchase price for the property. The Matlocks had lived on the property from the date they moved in to the date of the trial, which began October 2, 1956. Mr. Matlock testified that until sometime in the month of April of 1956 he had never heard of any claim by appellant.

At the time the sale to the Matlocks was closed, and accompanied by its financing through T. J. Bettes Company, there was an indebtedness thereon owing by Nu-Homes, Inc., to the Empire Investment Corporation in the sum of $5,950. As is customary, this indebtedness was cleared through the use of the financing funds received through the T. J. Bettes Company, and the lien securing the same was released by instrument dated March 22, 1955, (filed for record on October 28, 1955.) The recitation of the instrument is "in consideration of the payment in full of the above described note * * * release, discharge and quitclaim unto Mortgagor and Mortgagor's heirs, successors and assigns, all right, title, interest, * * *" as to the property in question.

It appears that as of January 20, 1955, Nu-Homes, Inc., conveyed the property in

question to Texas Building Company. The premises in question, along with a great deal of other property, were described as the subject of the transfer, and not only was Nu-Homes, Inc., the grantor in the deed, but other persons, firms and corporations were also grantors therein. It is obvious that such transfer was part and parcel of the transaction whereby additional security was provided for the appellant on the indebtedness owing it by the Texas Building Company. It would appear that the property in question was innocently included.

The deed heretofore mentioned as having been delivered to the Matlocks by the Texas Building Company in April of 1956 was obviously for the purpose of removing any question about the title they had purportedly received by the grant from Nu-Homes, Inc. The date thereof was about two weeks subsequent to the date appellant's suit was filed.

Evidence to the effect outlined was presented to the court, and the case was taken under advisement, no action having been taken toward judgment until December 31, 1956.

While the case was under advisement, another suit was prosecuted to judgment by this same appellant. That suit was against different defendants from those in the instant case except for Texas Building Company, which was a party defendant in both cases. By the judgment therein, the $42,000 debt was reduced to judgment and a foreclosure was decreed as to the lien securing said debt against the grouping of lots originally mortgaged. The property in controversy in the instant suit was not mentioned in this other suit, nor in the judgment entered thereupon. After the Sheriff's Sale of the lots pursuant to judgment, there was still an amount in excess of $20,000 owing on appellant's judgment.

In view of the foregoing events in such other case, culminating in the judgment for debt and foreclosure, the appellees con-

tended that questions posed in the instant case had become moot. Upon this reasoning, they moved for a dismissal. With this contention we cannot agree. The ultimate effect of the situation attendant to the other suit was to reduce the amount of the indebtedness owing by Texas Building Company to appellant, but there was still some indebtedness owing appellant after foreclosure. Question persisted as to whether appellant had any additional security for the indebtedness remaining by way of lien upon other real estate, specifically the property in controversy in this suit. Had the record thus presented demonstrated that the indebtedness was fully discharged, we would of course be required to dismiss—not the appeal merely, but the cause of action itself. But the real question in the case on appeal is whether appellant is afforded any security through its purported lien on the property in question. In this case, such constitutes a question of fact to be determined from evidence.

This court has recently had occasion to explore the question of parties' rights in connection with acquisition of liens upon real property which is in possession of a person other than the mortgagor. In the case of Brown v. Moss, Tex. Civ.App. Fort Worth 1954, 265 S.W.2d 613, 616, writ refused, n. r. e., Justice Renfro referred to 29 Tex.Jur., p. 865, "Mortgages", sec. 57, "Possession of Land by Person Other Than Mortgagor", as follows: "One who accepts a mortgage upon land which is in the possession of a person other than the mortgagor is charged with knowledge as to the interest of the possessor and he is held to have acquired a lien which is inferior to the possessor's estate or interest." The evidence of the Matlocks' possession in the instant case, as in the case of Brown v. Moss, was such as required inquiry on the part of appellant in a determination of the nature of the possessor's right. Appellant's failure to do so placed it in the position of having accepted the mortgage lien with full notice that the Matlocks claimed the property un-

der contract of purchase made with a grantor having title to convey. That such contract was oral rather than reduced to writing at the time appellant accepted the lien consituted no benefit to appellant since it affected only the rights of the Matlocks and Nu-Homes, Inc., as between themselves. Both of such parties proceeded in an acknowledgment that they were bound thereby.

Under what has been said, we believe that there is no question but what the trial court was entitled to find against the appellant on its claim. We will not discuss the counterpoints of certain appellees other than the Matlocks, directed to the contention that appellant's lien against the property would be subservient to that of the T. J. Bettes Company, and its assignee, under subrogation principles. Neither do we deem it necessary to discuss the contention of appellees, including the Matlocks, that they are entitled to have appellant's lien released for the $400 tendered by them under the provisions of the deed of trust upon the property in question.

What has been said above disposes of the sixth and seventh points of error presented by appellant. Its other points of error, being numbers one to five, inclusive, are all directed to an attack upon the validity of the judgment because of the circumstances under which it was purportedly rendered.

As previously stated, the trial court heard the case and the matter of judgment to be rendered was taken under advisement. The judge who heard the case was the Honorable Frank E. Fulgham, whose term of office ended with date of December 31, 1956. He had not run for reelection and it might generally be said that his authority ceased upon the assumption of the office of District Judge by his successor. As the end of his term drew near, the instant case was still under advisement. The trial court's docket sheet bears entry under date of December 31, 1956, as follows: "Judgement for Plaintiff against Texas Building Co. and Nu-Homes, Inc. for $42,000; Judgment for Deft's, Matlock and T. J. Bettes Co. and Lynn Institute for Savings against Texas Life Ins. Co.; as per decree on file." There was no decree placed on file until date of January 25, 1957. On that date a written form of judgment was signed, dated and entered. It appears on the minutes of the clerk of the court. The signature on the instrument is that of Frank E. Fulgham, as "Judge of the 43rd District Court of Parker County, Texas."

In the instrument on file, appellant is not given judgment for any amount in money against Texas Building Company. It contains a decree that appellant "take nothing" against all the other defendants, however, and the lien asserted by appellant, in so far as same obtains against the property in question in the suit, is canceled and held of no force and effect. It decrees judgment in favor of the Matlocks for title and possession to the property, subject only to the vendor's lien retained in the deed the Matlocks received from Nu-Homes, Inc., securing the note executed by them for the unpaid balance owing on the property and subject to the deed of trust additionally securing the same. It further decrees that the present owners and holders of the said vendor's lien, etc., possess first and valid liens against the property in question as against the appellant and as against all the other defendants who were parties to the suit brought by appellant.

On the appeal, appellant does not contend that it was entitled to any judgment for indebtedness against Texas Building Company. Indeed, it insists that it is not entitled to any such judgment. But it does contend that the instrument signed on January 25, 1957, has no standing as a judgment in the case, and that no judgment was properly pronounced by Judge Fulgham at a time when he had authority to render a judgment as the Judge of the 43rd District Court of Parker County.

■ It is to be noted that from the standpoint of "timetables" for appeal, judgments have a peculiar character. As to such, it is in general the "record" of the judgment which controls rather than the judgment itself. In the case of the instant appeal, the appellant seems to have been conscious of the rule of law applicable, for its appeal bond was filed only a very few days before thirty days after January 25, 1957 (there having been no motion for new trial).

But in other respects and for other purposes, the date a judgment is rendered is the date on which the trial judge in open court (except under circumstances constituting an exception) declares his decision of law upon the matters in issue. 25 Tex. Jur., p. 424, "Judgments", sections under subtitle V, "Rendition, Entry and Operation * * *"; Knox v. Long, 1953, 152 Tex. 291, 257 S.W.2d 289; Universal Life Insurance Co. v. Cook, Tex.Civ.App. Waco 1945, 188 S.W.2d 791. Circumstances do not exist in the instant case constituting an exception.

The docket entry does not constitute the judgment in itself nor does the instrument lodged with the clerk on January 25, 1957. The docket entry does, however, constitute evidence that Judge Fulgham rendered judgment in the case on December 31, 1956. Absent proof to the contrary, it would be presumed that its rendition was in accord with the formalities of law, i. e., that it was pronounced in open court. Though appellant asserts in its brief that Judge Fulgham never pronounced any judgment whatsoever in open court, there is no bill of exception in the record. Neither is there any record of evidence bearing upon the matter. The question is not shown of record to have been raised until appeal was perfected to this court.

■ We consider it our duty under such circumstances, and in view of the state of the record, to hold that Judge Fulgham did' properly pronounce and thus render judgment in the case on December 31, 1956. Coleman v. Zapp, 1912, 105 Tex. 491, 151 S.W. 1040.

■ We deem it immaterial to this particular case whether it should have been Judge Fulgham or his successor in office who should have performed the ministerial act of signing the instrument of judgment of January 25, 1957. The successor would, of course, have been a stranger to the proceedings upon which judgment was rendered. The record thereof, as evidence of the provisions of the judgment actually rendered, would be somewhat synonymous to bills of exception required to be approved pursuant to an appeal after the judge who presided at the time of trial was no longer in office. Before the effective date of Article 2248, Vernon's Ann.Civ.St., relative to an analogous situation, there was a judicial decision to the effect that the judge who had tried the case should make the record so far as necessary to complete that which reflects the operation of his own mind or relates to his own conduct in the particular case, even though his term of office had expired. Storrie v. Shaw, 1903, 96 Tex. 618, 75 S.W. 20. Somewhat analogous reasoning is to be found in the cases of Carwile v. William M. Cameron & Co., 1908, 102 Tex. 171, 114 S.W. 100, and Bridgman v. Moore, 1944, 143 Tex. 250, 183 S.W.2d 705. In so far as the signing of the form of judgment on January 25, 1957, was concerned, Judge Fulgham's judicial function (existent on and before December 31, 1956) survived and continued as necessary to lend efficacy to the act. That the question is not generally settled is apparent from the authorities cited under 49 C.J.S. Judgments § 113 c, Delay, sub. (3), Expiration of Judge's Term of Office p. 243 (and the authorities proceeding in 34 C.J. p. 67, note 96).

The judgment is affirmed.