

# NUMBER 13-18-00560-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

NUECES COUNTY CIVIL SERVICE
COMMISSION,                                                                    Appellant,

v.

RICHARD MORRISEY,                                                         Appellee.

### On appeal from the 347th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Hinojosa**
**Memorandum Opinion by Justice Hinojosa**

Appellant, the Nueces County Civil Service Commission (the Commission), terminated appellee Richard Morrisey, a Nueces County Constable deputy, for his failure to timely report an incident of family violence. Morrisey appealed the Commission's decision to terminate to a district court.

By four issues, the Commission argues the trial court erred when it: (1) vacated a judgment outside the window of its plenary power; (2) concluded that the Commission's employment decision was not supported by substantial evidence; (3) held that Morrissey's substantial rights were prejudiced; and (4) reinstated Morrissey with back pay and benefits instead of remanding to the Commission for a new hearing. We vacate the trial court's judgments rendered after its plenary power expired, and we dismiss the case.

## I.    BACKGROUND

### A.    The Initial Incident

Morrisey worked as a deputy for the Precinct 3 Nueces County Constable. On August 10, 2015, Morrisey responded to a domestic disturbance call. The disturbance occurred at the home of Raul Mata and his girlfriend, Yolanda Beltran. Beltran's granddaughter Clarissa also lived at the home. Mata reported that Clarissa was arguing with him and Beltran using "vulgar and profane language" when she picked up a kitchen knife and allegedly threatened to kill him. Mata expressed that because he was on parole and did not want any trouble, he left the house and went to the police department to report the incident. Mata told Morrisey he wanted Clarissa to move out of the house.

Morrisey also questioned Beltran. She confirmed that her granddaughter picked up a knife during the argument. Beltran also told the officer that she wanted her granddaughter out of the home, so Morrisey gave her information about how to evict her through the local justice of the peace.

According to Morrisey, Mata did not want to file a report because of his parole status. For this reason, Morrisey did not file a report. Morrisey then took a few days of

personal leave. Police were called to the house again on August 11, 12, and 13. On August 13, another incident occurred between Mata and Clarissa that prompted Clarissa to file a police report telling a different version of what happened on August 10th. She reported that Mata pinned her against the kitchen counter. Mata was arrested and jailed pending a court date because of his parole status.

Mata then contacted Chief Deputy Oscar Mendoza. According to Mendoza, Mata told Morrisey that he *did* want to file a report on August 10th because Clarissa threatened him with a knife, which was why he went to the police department in the first place. He claimed, however, that Morrisey told him if he arrested Clarissa, he would also have to arrest Mata, and that Clarissa would get out of jail but that Mata would not because of his parole status.

Mendoza filed a report about the August 10th incident on August 19, 2015. The reports had to be expedited because Mata was arrested for the alleged parole violation by the parole board. Morrisey, when he returned to work and was informed about the ensuing family circumstances that led to Mata's arrest, filed a separate report on August 24, 2015, fourteen days after the initial incident.

On August 27, 2015, Morrisey received notice from his employer that his failure to immediately file a report in this incident violated article 5.05 of the Texas Code of Criminal Procedure, which provides as follows:

(a)    A peace officer who investigates a family violence incident or who responds to a disturbance call that may involve family violence shall make a written report, including but not limited to:

(1)    the names of the suspect and complainant;

3

> (2)    the date, time and location of the incident;
>
> (3)    any visible or reported injuries;
>
> (4)    a description of the incident and a statement of its disposition; and
>
> (4)    whether the suspect is a member of the state military forces or is serving the armed forces of the United States in an active-duty status.

Tex. Code Crim. Proc. Ann. art. 5.05.

Morrisey signed this notice as acknowledgement of its receipt. On September 9, 2015, Mendoza gave Morrisey formal notice that he had been terminated.

## B.    The Civil Service Commission Hearing

Morrisey appealed his termination to the Commission. Mendoza testified that Morrisey violated internal protocol, in addition to the code of criminal procedure, by failing to file a report where a deadly weapon was used in a family violence episode. Mendoza testified that Morrisey's failure to file a report where a deadly weapon was displayed opened the county up to both civil and criminal liability. After a five-hour contested hearing, the Commission upheld the decision to terminate.

## C.    Morrisey's Appeal to the District Court

On December 5, 2015, Morrissey appealed the Commission's decision to a district court under the substantial evidence rule. Two years later, the trial court placed the case on its October 11, 2017 "drop docket"—a docket for cases which are set to be dismissed for failure to prosecute. According to an affidavit from the Commission's attorney, Morrissey's attorney went to the court to orally ask the judge that the case be removed

4

from that docket, and the judge asked the coordinator to do so.[1] The court coordinator did not remove it from the case list that day, however, so the case remained on the drop docket schedule. Of note, both parties were aware that there was a docket control conference scheduled for October 18, 2017, a week after the drop docket.

Morrisey did not attend the drop docket hearing, but the Commission did. When the case was called, only the Commission was present. The trial court announced on the record, "All right. DWOP. Thank you." The Commission did not let the court know that there was a docket control conference scheduled for the next week. That same day, the court signed an order dismissing the case for want of prosecution. According to the clerk's record, the court mailed a copy of the dismissal order to all counsel of record.

Morrisey claimed that he believed the case was active and that the docket control conference was still pending. He apparently called in on October 18, 2017 to initiate the conference, but because the court coordinator was out of the office, Morrisey asked that it be rescheduled. There is nothing in the record, however, to indicate that he did not receive the court's order of dismissal. And he did not, for example, file a motion to reinstate the case or to set aside the order of dismissal within the court's period of plenary power. Instead, over four months later, the district court vacated the judgment sua sponte, without notice to the Commission. The district court claimed the dismissal was a clerical mistake and signed a judgment nunc pro tunc on February 14, 2018, vacating the dismissal order.

The Commission filed a plea to the jurisdiction, contending the trial court no longer

---

[1] The record shows that Morrisey did not file any objections to this affidavit.

had plenary power to vacate its decision. The trial court denied the motion, concluding that the case was dismissed due to a clerical error, not a judicial error. The court later denied the Commission's motion to reconsider and rendered a final judgment in favor of Morrisey on July 12, 2018, and an amended final judgment on September 11, 2018. In its judgment, the trial court reinstated Morrisey with back pay and benefits. The court also issued Findings of Fact and Conclusions of Law, holding that the Commission's decision to terminate was not supported by substantial evidence and that Morrisey's substantial rights were prejudiced.

The Commission appeals.[2]

## II.     JUDGMENT NUNC PRO TUNC

As a threshold matter, we must first determine whether, by its judgment nunc pro tunc, the trial court corrected an error that was clerical or judicial in nature. If it was the former, we may proceed to the merits of the Commission's appeal brief. If it was the latter, the trial court had no jurisdiction to vacate the order, and the order of dismissal must stand.

## A.     Standard of Review & Applicable Law

"It has long been settled that judgment is *rendered* (emphasis added) when a trial court's decision is officially announced." *Wood v. Griffin & Brand of McAllen*, 671 S.W.2d 125, 128 (Tex. App.—Corpus Christi–Edinburg 1984, no writ) (emphasis in original). "Its

---

[2] Morrisey previously filed a Motion to Dismiss for Lack of Jurisdiction with this Court, arguing that the Commission filed an untimely appeal. Morrisey averred that the Commission's appellate deadlines were not extended because the Commission's request for findings of fact and conclusions of law were not "required" and/or could not be properly considered by the appellate court. *See* TEX. R. APP. P. 26.1(a)(4). We denied this motion on April 22, 2019. Morrisey re-urges this motion in his appellee brief, and we decline the invitation to reconsider our previous ruling.

rendition is the judicial act by which the court settles and declares the decision of the law upon the matters at issue." *Id*.; *see Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex. 1982) (per curiam) ("A judgment is in fact rendered whenever the trial judge officially announces his decision in open court.").

Texas Rule of Civil Procedure 316 sets forth the rule regarding judgments nunc pro tunc. *See* TEX. R. CIV. P. 316. It provides that, "[c]lerical mistakes in the record of any judgment may be corrected by the judge in open court according to the truth or justice of the case after notice of the motion therefor[e] has been given to the parties interested in such judgment, as provided in Rule 21a, and thereafter the execution shall conform to the judgment as amended." *Id*. The nunc pro tunc judgment is invalid, however "if it purports to change and re[-]adjudicate or rewrite and change the terms of the judgment as rendered, i.e., the decretal portion of the judgment." *Wood*, 671 S.W.2d at 129. The trial court's finding or conclusion that the error is clerical is not binding on this court. *Id*. at 130 (citing *Finlay v. Jones,* 435 S.W.2d 136, 138 (Tex. 1968)).

The parties both cite to *Knox v. Long*, 257 S.W.2d 289 (Tex. 1953), and *Universal Underwriters v. Ferguson*, 471 S.W.2d 28 (Tex. 1971), in support of their respective positions regarding whether a judgment nunc pro tunc was appropriate in this case. We discuss each case below.

In *Knox*, the Texas Supreme Court analyzed the acts and intentions of a trial court judge and the court staff. *See* 257 S.W.2d at 295-96. In that case, a court clerk had identified 182 docket sheets to dismiss for want of prosecution and placed them all on the judge's desk for signature. *See id*. Over the course of the next few days, the judge went

7

through the pile and signed all of the sheets, ordering their dismissal. *See id*. at 296. Before the sheets were submitted to the district clerk, though, the judge asked his staffer to make sure none of the cases were active. *Id*. The staffer found that two of the cases, including Knox's case, were active and removed them from the stack. *Id*. By accident, however, the two sheets were added back to the stack and all 182 cases were dismissed.

The Texas Supreme Court held that "this was a clerical error in the entry of a judgment rather than a judicial error in the rendition of a judgment." *Id*. at 297. The court held that the signed orders of dismissal were "provisional and the judge was still in control of all of them with no intention of permitting any of them to become judgments of the court until he first satisfied himself that none of the cases were active." *Id*. at 292.

In *Ferguson*, Walter Stedman secured a judgment against Wilma Brothers for personal injuries he sustained in a motor vehicle accident in 1966. *See* 471 S.W.2d at 29. The judgment became final and was partially paid. *See id*. A year later, in May of 1967, Stedman filed suit against Universal Underwriters for the balance of the judgment, "alleging that Wilma Brothers was an additional insured" under their policy. *Id*. Universal Underwriters timely filed an answer. *Id*. Three years later, Judge Ferguson dismissed several cases on his docket for want of prosecution, including Stedman's second pending case. *Id*. Judge Ferguson signed an order reading as follows:

> On this the 23rd day of October, A.D. 1970 the docket of the District Courts of Brazoria County, Texas was sounded and the following cases were dismissed for want of prosecution, to-wit: (list of cases, including No. 48, 223, Walter Stedman v. Universal Underwriters Insurance Co.).
>
> *Rendered* and entered on this the 26th day of October, A.D. 1970.

*Id.* (emphasis added).

In December, Stedman filed a motion for a nunc pro tunc order to set aside the dismissal judgment on the ground that it was caused by a clerical error—the court clerk sent notice of the dismissal docket only to Universal Underwriters' attorney, not Stedman's attorney. *Id*. Accordingly, Stedman had no notice that his case was on Judge Ferguson's dismissal docket and did not appear at the drop docket. *Id*. The trial court agreed with Stedman and issued a judgment nunc pro tunc. *Id*. Universal Underwriters appealed, arguing that the trial court's dismissal order was "rendered"; thus, by signing the nunc pro tunc order, the trial court improperly corrected a judicial mistake instead of a clerical mistake. *Id*.

The Texas Supreme Court agreed with Universal Underwriters. *Id*. at 29-30. The high court distinguished this case from *Knox* by recognizing that "Stedman's case was included in the judgment of dismissal as rendered." *Id*. at 30. It concluded that "errors in rendered and entered judgments are not clerical merely because they are based upon or grow out of clerical errors." *Id*. (citing *Finley*, 435 S.W.2d at 138).

With these cases in mind, we proceed to our analysis.

**B.      Analysis**

Here, the trial court set Morrisey's case on its drop docket. Morrisey went to the court and informed the court that he intended to proceed with his case. The court informed its coordinator, Garcia, to remove Morrisey's from the court's drop docket. Morrisey did not, however, file a formal motion giving notice that he wanted this case removed from the DWOP docket, and Garcia forgot to remove it as instructed.[3]

---

[3] Morrisey mentions in his briefing that the Commission had a duty of "candor to the court" to let it know that there was a Docket Control Conference set in this case after the drop docket hearing. *See* TEX.

9

We find the facts of this case closer to *Ferguson* than to *Knox* for one crucial reason: the trial judge orally rendered a judgment of dismissal in open court. In *Knox*, the signed orders of dismissal were "provisional" until the judge was satisfied that there were no active cases. *See* 257 S.W.2d at 292. Then, by accident, a court employee misplaced two signed case sheets of active cases onto a stack of papers meant to be dismissed. *Id.* at 295-96. In the underlying case, though, the trial court made an oral pronouncement on the record. When the Commission was present at the drop docket and Morrisey was not, the trial judge pronounced, "All right. DWOP. Thank you." There was nothing "provisional" about the nature of the court's ruling. *See id*. at 292. Although the trial court would not have dismissed the case but for the court coordinator's failure to remove the case from the drop docket, "errors in rendered and entered judgments are not clerical merely because they are based upon or grow out of clerical errors." *Ferguson*, 471 S.W.2d at 29. "In determining whether the error is judicial or clerical, the critical inquiry is not what judgment might or ought to have been rendered, but only what judgment was actually rendered." *Wood*, 671 S.W.2d at 131 (citing *Coleman v. Zapp*, 151 S.W. 1040, 1041 (Tex. 1912)). We conclude this error was judicial, not clerical. *Id.* Accordingly, it could not be remedied through a judgment nunc pro tunc.[4] *Id*.; *see also Escobar v. Escobar*, 711

DISCIPLINARY RULES PROF'L CONDUCT 3.03, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A. And the Commission alludes that it had no notice that Morrisey had gone directly to the judge to make an "ex parte" request to remove their case from the court's drop docket. We decline to address the issue of attorney conduct on either side as it is not fully briefed by either party. *See* TEX. R. APP. P. 38.1(i).

[4] Morrisey asserts that, in the event we find that the error was judicial, then it was invited error on the part of the Commission. The concept of invited error prevents a litigant from complaining about mistakes that he helped cause. *See In re Marriage of Palacios*, 358 S.W.3d 662, 664 (Tex. App.—Amarillo 2009, pet. denied). We find this argument unconvincing in light of the facts that Morrisey himself failed to: (1) file a motion to retain the case on the docket, (2) ensure that the court coordinator removed the case from the docket, (3) appear at the drop docket, or (4) apprise the court of the case's dismissal within the trial court's time of plenary power despite the fact that the district court mailed a copy of the dismissal order to him.

S.W.2d 230, 231 (Tex. 1986) (explaining that after the trial court loses its plenary power over a judgment, it can correct only clerical errors). Instead, the trial court's plenary power expired thirty days after it rendered its dismissal order, and any judgments rendered after that time are void. *See* TEX. R. CIV. P. 329b(d) ("The trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed."); *Morris v. O'Neal*, 464 S.W.3d 801, 808 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (noting that, if the trial court attempts to correct a judicial error by signing a judgment nunc pro tunc after its plenary power expires, the judgment is void); *Wood*, 671 S.W.2d at 128.

Having sustained this threshold jurisdictional issue, we need not address the Commission's remaining issues as they are moot. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as possible but that addresses every issue raised and necessary to final disposition of the appeal.").

### III.    CONCLUSION

We vacate any and all judgments rendered by the trial court subsequent to the expiration of its plenary power—including but not limited to its judgment nunc pro tunc of February 14, 2018, and its judgments of July 12 and September 11, 2018—and we dismiss the case. *See* TEX. R. APP. P. 43.2(e).

LETICIA HINOJOSA
Justice

Delivered and filed the
30th day of April, 2020.

11