392 F.2d 913
 Elaine H. FUNK and Jody C. Funk, a minor, by her mother and
next friend, Elaine H. Funk, Plaintiffs-Appellees,
v.
FRANKLIN LIFE INSURANCE COMPANY, an Illinois Insurance
Company, Defendant-Appellant.
 No. 16450.
 United States Court of Appeals Seventh Circuit.
 Feb. 28, 1968, Rehearing Denied March 27, 1968.
 
 James B. O'Shaughnessy, Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., for defendant-appellant.
 Ronald A. Orner, Norton Wasserman, John M. Mack, Chicago, Ill., for plaintiffs-appellees.
 Before SCHNACKENBERG, CASTLE and FAIRCHILD, Circuit Judges.
 CASTLE, Circuit Judge.
 
 
 1
 The plaintiffs-appellees, Elaine H. Funk and Jody C. Funk, brought this diversity action in the District Court against Franklin Life Insurance Company, defendant-appellant, to recover the proceeds of a twenty-year reducing term life insurance policy issued by the defendant June 30, 1958, upon the life of Harry Craig Funk. The insured died on February 21, 1961. The plaintiffs are his widow and his daughter who are, respectively, the primary and the first contingent beneficiaries named in the policy. The defendant refused payment on the policy on the grounds of its lapse for non-payment of the monthly premiums subsequent to December, 1960, and the rejection of the insured's February 17, 1961, application for reinstatement of the policy. The cause was tried to a jury which returned a verdict for the plaintiffs upon which the court entered judgment. The defendant appealed.
 
 
 2
 The main contested issues presented for our determination are (1) whether the defendant's appeal was timely effected,[1] and (2) whether the court erred in denying the defendant's motion for judgment notwithstanding the verdict.
 
 
 3
 Plaintiffs' complaint sought recovery of $20,000. It alleged that 'there is now due and owing to the plaintiffs' the sum of $16,509 based on the commuted value of the policy under its terms, and that plaintiffs are entitled to an award of reasonable attorneys' fees and to pre-judgment interest at the rate of 5 percent per annum from the date of the insured's death because of 'unreasonable and vexatious'[2] refusal of payment and delay in payment. The two forms of verdict submitted to the jury called only for a general finding for the plaintiffs or for the defendant without requiring a determination by the jury of the amount of recovery if the jury found for the plaintiffs. The jury returned a sealed verdict on June 9, 1967. It was for the plaintiffs, and when it was opened on June 14, 1967, a docket entry was made 'enter judgment on the verdict for the plaintiffs for the sum due under the policy of insurance, to be computed'. Thereafter, on June 20, 1967, the court entered judgment for the plaintiffs in the sum of $20,620.07 with post-judgment interest and costs.
 
 
 4
 The amount which would be recoverable by the plaintiffs under the terms of the policy, as well as the defendant's liability thereunder, was a matter put in issue by the pleadings. The issue as to the amount recoverable was resolved by agreement of the parties subsequent to the June 14, 1967, docket entry, and the agreed computation thereof supplied the monetary sum awarded by the judgment order of June 20, 1967. Defendant filed its notice of appeal August 4, 1967. In the interim its motion for judgment n.o.v., or in the alternative for a new trial, which it filed June 29, 1967, had been denied on July 5, 1967.
 
 
 5
 On the facts and circumstances here involved we conclude that the entry of June 14, 1967, was not a final appealable order. It was incomplete. Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528. Thus under Rules 50(b) and 59(b) of the Federal Rules of Civil Procedure (28 U.S.C.A.) defendant's post-trial motion was timely filed, and under Rule 73(a) defendant's notice of appeal was filed in apt time. The motion of the plaintiffs to dismiss the appeal is denied. And their contention that the defendant's post-trial motion was ineffective to preserve for review the questions sought to be argued on appeal is without merit.
 
 
 6
 We turn to consideration of the issue as to whether the court erred in denying the defendant's motion for judgment notwithstanding the verdict. Questions raised by a motion for judgment n.o.v. are the same as those raised by a motion for a directed verdict. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147; Shaw v. Edward Hines Lumber Co., 7 Cir., 249 F.2d 434, 437; Lambie v. Tibbits, 7 Cir., 267 F.2d 902, 903. The motion is properly denied where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions. Smith v. J. C. Penny Company, 7 Cir., 261 F.2d 218, 219. But, where so viewing the evidence, it fails, as a matter of law, to support the verdict of the jury it is error to deny the motion. Smith v. J. C. Penny Company, supra; Cf. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720.
 
 
 7
 Viewed most favorably to the plaintiffs, the pertinent evidence may be summarized as follows. On June 7, 1958, Harry Craig Funk made an application to the defendant for a policy of life insurance on his own life. A report from another insurer to whom Funk had previously applied indicated that as of June 19, 1956, his blood pressure readings were such that defendant regarded them as very high. But on the basis of additional blood pressure readings taken in June of 1958, showing pressures of 135 over 80, 130 over 80, and 120 over 80, which were considered acceptable by the defendant, the policy here involved was issued on June 30, 1958. It contained the following provision concerning reinstatement:
 
 
 8
 'Reinstatement: This policy may be reinstated (unless previously surrendered to the Company) at any time within five years after default in payment of any premium after the first upon written application to the Company and presentation at the Home Office of evidence of insurability of the Insured satisfactory to the Company and payment of all past due premiums with interest thereon at the rate of 5% Per annum from their respective due dates.'
 
 
 9
 Some two years later Funk applied for insurance to a different insurance carrier. In this connection he had additional blood pressure readings on June 9, 1960, which showed pressures of 182 over 120 and 116, 180 over 130 and 126, and 170 over 114 and 110. This information was reported to the defendant through the Medical Impairment Bureau, a service to which defendant subscribed. When this information was received the defendants' file on the Funk policy was coded with a mark indicating 'do not renew automatically'.
 
 
 10
 Funk made all monthly premium payments required under the policy until the end of 1960. He failed to make the payments due on December 30, 1960, and January 30, 1961. This caused the policy to lapse. Thereafter the defendant mailed Funk a lapse notice and reinstatement application. Funk completed the reinstatement application, representing to the defendant that he was in good health, and that during the past five years he had not undergone medical treatment and was free from illness. On February 17, 1961, Funk mailed the reinstatement application to defendant, together with a money order for the sum necessary to effect reinstatement. February 17 was a Friday. The application and money order arrived at the home office of the defendant in Springfield, Illinois, on Monday, February 20, 1961, and was time-stamped in defendant's policy owner's service department at 1:38 p.m. Defendant's normal routine in processing such applications began at once. On February 22, 1961, after consideration of the information contained in the file on the policy an underwriter clerk of the defendant indicated on the work-sheet accompanying the file that a medical examination at insured's expense and one additional blood pressure reading on an alternate date be requested, and returned the material to the policy owner's service department. Before a letter calling for the additional medical information had gone out the defendant received notice on February 23, 1961, that Funk had died on February 21, 1961. The notice was referred to defendant's claim department, and on February 24, 1961, the file came to the attention of the assistant claims director. During the ensuing three-week period the defendant obtained an investigation report, a statement from the physician who signed Funk's death certificate,[3] and verified the information it had previously received through the Medical Impairment Bureau concerning Funk's June 1960 blood pressure readings. On March 10, 1961, the plaintiffs, having theretofore furnished the defendant with completed proof of death forms, made demand on the defendant for the amount due under the policy. On March 16, 1961, the defendant wrote the plaintiffs advising that the application for reinstatement 'could not be approved' and that their claim was denied. The letter stated:
 
 
 11
 'Your husband's history of high blood pressure over the past year, of which we were aware, made him ineligible for reinstatement of his policy, but our underwriters had decided to consider reinstatement upon the basis of a complete medical examination at your husbands own expense and one additional blood pressure reading on a date other than the date of the medical examination. Before we had opportunity to write your husband we were informed of his death. Since his death we have checked further into this history of high blood pressure in order to make certain that our declination action on his reinstatement was entirely in order'.
 
 
 12
 The money order tendered in payment of the unpaid premiums was endorsed by the defendant payable to the plaintiffs and returned in the March 16, 1961, letter.
 
 
 13
 Illinois law, under which this diversity action was tried,[4] follows the 'revival of the lapsed policy' approach to reinstatement. Monahan v. Fidelity Life Insurance Co., 242 Ill. 488, 90 N.E. 213. In this connection it is stated in Froehler v. North American Life Insurance Co.,374 Ill. 17, 23, 27 N.E.2d 833, 836, that:
 
 
 14
 '* * * The insured had a contractual right to be reinstated and this provision of his policy was as valid and binding as any other provision therein. Under such a policy as this one the lapse for nonpayment of premiums does not make necessary the formation of a new contract, but the reinstatement when effected, merely cancels the forfeiture, leaving the original contract in full force.'
 
 
 15
 Again, in Kahn v. Continental Casualty Co., 391 Ill. 445, 455, 63 N.E.2d 468, 472, it is observed:
 
 
 16
 'The rule is definitely settled that the right to reinstate a policy after it has lapsed, given to the insured by the policy itself, is a valuable contractual property right which survives the lapse of the policy.'
 
 
 17
 In Froehler, supra, it is recognized that an insurer's duty to act reasonably survives the death of a policyholder which occurs during the pendency of his reinstatement application. See also: Gressler v. New York Insurance Co., 108 Utah 182, 193, 163 P.2d 324, 164 A.L.R. 1047; Kennedy v. Occidental Life Ins. Co., 18 Cal.2d 627, 117 P.2d 3; and Waldner v. Metropolitan Life Ins. Co., 149 Kan. 287, 87 P.2d 515.
 
 
 18
 We conclude that under Illinois law it is the duty of the insurer to act on the reinstatement application without unreasonable delay and to apply a reasonable standard of insurability in determining whether the contract provision requiring the presentation of 'evidence of insurability of the Insured satisfactory to the Company' has been met. It is not a requisite to reinstatement that the person named as insured be alive. Where death intervenes before action has been taken on the reinstatement application, the insurer is nevertheless bound to act reasonably in its determination of insurability.
 
 
 19
 The defendant contends, however, that there is no evidence to warrant a conclusion that the defendant either unreasonably delayed action of the reinstatement application, or applied an unreasonable standard of insurability in rejecting it, so as to preclude the defendant from asserting the lapse of the policy as a defense to liability thereunder. We agree.
 
 
 20
 The defendant received the application in the afternoon of February 20, 1961. On February 22nd it determined, on the basis of the June 1960 report of Funk's high blood pressure readings, to require additional medical information including current blood pressure readings before approving the application from the standpoint of existing insurability. On the next day it learned that Funk had died on February 21st. Up to that point there had been no unreasonable delay in acting on the application. And the defendant's duty to make a determination of Funk's insurability as of February 20, 1961, by application of a reasonable standard of insurability continued, despite his death. The situation however had drastically changed with the death of Funk. The medical examination and additional blood pressure readings from which the defendant could have determined current insurability were no longer obtainable due to a circumstance beyond its control. But the defendant did not act arbitrarily nor unreasonably in rejecting the reinstatement application. It applied no unreasonable standard of insurability in its ultimate rejection of the application. It first made such investigation as the circumstances permitted. And, it proceeded to seek and obtain verification of the 'reported' June 1960 blood pressure readings. In doing so it ascertained that the report was accurate and that another carrier had at that time denied Funk's application for additional insurance. Those high blood pressure readings of less than a year previous afforded a basis for the defendant's dissatisfaction with the evidence relating to Funk's insurability at the time of his application. The three-week delay involved in securing the information and notifying the plaintiff beneficiaries of rejection of the application and of their subsequent claim for benefits under the policy is without critical significance in the context here involved. No rights of the plaintiffs were jeopardized nor were they harmed thereby. The defendant had a right to require satisfactory evidence of insurability measured by a reasonable standard. Its action in the premises was neither arbitrary nor unreasonably dilatory.
 
 
 21
 We conclude that the evidence fails, as a matter of law, to support the verdict, and the District Court erred in denying the motion for judgment n.o.v. The judgment order appealed from is reversed.
 
 
 22
 Reversed.
 
 
 
 [1]
 A motion to dismiss the appeal as untimely was taken with the case
 
 
 [2]
 Ill.Rev.Stat., ch. 73, 767 and ch. 74, 2
 
 
 [3]
 The death certificate gave as the cause of death 'acute coronary thrombosis' due to 'arteriosclerosis' and 'hypertension' of 'years' between onset and death
 
 
 [4]
 The policy was issued in Illinois to an Illinois citizen by an Illinois company