**DEPOSITORS TRUST COMPANY**

v.

**FARM FAMILY LIFE INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued May 4, 1982.

Decided June 3, 1982.

Anderson, Merrill, Norton & Relyea, Lawrence E. Merrill (orally), Thatcher M. Adams, Bangor, for plaintiff.

Platz & Thompson, P. A., John M. Whalen (orally), Lewiston, for defendant.

Before McKUSICK, C. J., and NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.

McKUSICK, Chief Justice.

In Superior Court (Kennebec County) plaintiff Depositors Trust Company won a general jury verdict for $100,000 against defendant on a life insurance policy. The Superior Court denied plaintiff's motion for penalty interest and attorney fees under 24–A M.R.S.A. § 2436 (Supp.1981), and plaintiff appeals. Defendant cross appeals, seeking to have the judgment set aside on various grounds of error. We deny both the appeal and the cross-appeal, and affirm the judgment in all respects.

Prior to his death in an automobile accident on November 2, 1977, Brainard E. Caverly III owned and operated a dairy farm in Clinton in partnership with his brothers Frank and Edgar. In July, 1976, the three brothers entered into a buy-sell agreement whereby the life of each would be insured, with the insurance proceeds to be applied for the purchase by the survivors of the decedent's share of the farm. In event of the death of one brother, Depositors Trust,

the named beneficiary on the life insurance policies, would collect and distribute the proceeds of the insurance on his life in order to carry out the terms of the buy-sell agreement. The insurance policies were obtained from defendant Farm Family Life Insurance Company ("FFLIC"). Each policy contained a standard provision governing reinstatement in the event that the policy should lapse for nonpayment of premiums, stipulating that the policy would be reinstated within five years if the insured submitted a written application for reinstatement, produced evidence of insurability satisfactory to the insurer, and paid all overdue premiums.[1]

Brainard's policy lapsed after the quarterly premium was not paid when due on July 21, 1977. Thomas Foster, the FFLIC agent who had sold the Caverlys their policies, visited the Caverly farm on October 3, 1977, to tell them that Brainard's policy had lapsed. The insurance agent filled out a reinstatement application, which Brainard signed, and collected a check for the unpaid premium. Foster did not tell Brainard that another physical examination would be required, but he later testified that he did tell him that the reinstatement application was "conditional." According to Thomas Arnstein, an FFLIC official who testified at trial, the information on the reinstatement application showed no increase in risk for purposes of Brainard's insurability.

FFLIC began processing the renewal application. Had the policy been in force, another premium would have come due on

October 21. A premium notice would have been sent in advance of that due date, and overdue notices would have been sent had the due date passed without payment. No such notices were sent; FFLIC made no attempt to collect the premium because its officers had not decided whether to reinstate the policy.

On Friday, October 28, Foster went to the farm again and told Brainard that he would have to take a physical examination. On the following Monday, October 31, by Foster's prearrangement, Brainard was examined by a nurse working for a concern that made a business of performing physical examinations for insurance companies. She filled out a FFLIC examination form that was subsequently admitted in evidence.

Only two days later, Brainard was killed in an automobile accident. As of that time the FFLIC home office had not yet received the report of the physical examination, and FFLIC took the position that the policy was not in force at the time of Brainard's death. About a week later, Foster and an FFLIC regional representative, Roger Ennis, went to the Caverly farm and orally denied coverage to the surviving brothers.

Depositors Trust, the named beneficiary, sued both FFLIC and Foster. At trial, the court granted a directed verdict for Foster but denied a directed verdict for FFLIC. The court also denied plaintiff's motion to proceed against FFLIC for statutory interest and attorney fees. Both plaintiff and defendant have taken timely appeals. Plaintiff has not appealed the judgment for defendant Foster.

---

1. The reinstatement provision of the life insurance policy issued by FFLIC read in full as follows:

REINSTATEMENT

The policy may be reinstated within five years after the due date of the first unpaid premium unless the surrender value has been paid or otherwise exhausted, or the period of any extended term insurance has expired. The reinstatement requirements are:

(a) A written application for reinstatement, and

(b) Production of evidence of insurability satisfactory to the Company, and

(c) Payment of overdue premiums with interest at the rate of 5 per cent compounded annually to the date of reinstatement, and

(d) Payment or reinstatement of any indebtedness outstanding when the policy lapsed, with payment of interest.

On the facts of the case at bar, there was no indebtedness under clause (d), and FFLIC waived interest under clause (c).

We have not heretofore considered this clause, which is substantially mandated by 24-A M.R.S.A. § 2512 (Supp.1981), but equivalent clauses have been interpreted by other courts. See Thompson v. Northwestern Security Life Ins. Co., 44 N.C.App. 668, 262 S.E.2d 397 (1980); Bruegger v. National Old Line Ins. Co., 387 F.Supp. 1177 (D.Wyo.1975), modified on other grounds, 529 F.2d 869 (10th Cir. 1976); Funk v. Franklin Life Ins. Co., 392 F.2d 913 (7th Cir. 1968).

### I. The appeal: interest and attorney fees.

Under 24–A M.R.S.A. § 2436 an insurer may be required to pay penalty interest and attorney fees if it fails to pay an undisputed claim within a prescribed time.[2] The Superior Court, in ruling that the statute was inapplicable, relied on *Burne v. John Hancock Mutual Life Insurance Co.*, Me., 403 A.2d 775 (1979), in which this court held that section 2436 did not apply to life insurance policies. *Burne* construed an earlier version of section 2436 that by its terms governed "[c]laims made by a named or other person insured thereunder for payment of benefits under a policy of insurance against loss."[3] We held that the quoted language excluded life insurance from the coverage of the statute because a life insurance policy is collected upon only when the insured is dead and cannot himself make any claim. Plaintiff argues that because the language found critical in *Burne* has been amended to read "[a] claim for payment of benefits under a policy of insurance against loss," without limiting the identity of the person by whom the claim is made, the statute must now be construed to cover all kinds of insurance, including life insurance.

We disagree. Initially we point out that, whatever the motivation behind the change in the statutory language, it was not ∴ reaction to our decision in *Burne*. Section 2436 was enacted in its present form in 1977, while *Burne*, which interpreted the original version of section 2436, was not decided until 1979.

---

2. 24–A M.R.S.A. § 2436 (Supp.1981) reads in full as follows:

   Late payment

   A claim for payment of benefits under a policy of insurance against loss delivered or issued for delivery within this State is payable within 30 days after proof of loss is received by the insurer and ascertainment of the loss is made either by written agreement between the insurer and the insured or by filing with the insured of an award by arbitrators as provided for in the policy, and a claim which is neither disputed nor paid within 30 days is overdue; provided, however, that if during the 30 days the insurer, in writing, notifies the insured that reasonable additional information is required, the undisputed claim shall not be overdue until 30 days following receipt by the insurer of the additional required information.

   An insurer may dispute a claim by furnishing to the insured, or his representative, a written statement that the claim is disputed with a statement of the grounds upon which it is disputed.

   If an insurer fails to pay an undisputed claim, or any undisputed part thereof when due, the amount of the overdue claim or part thereof shall bear interest at the rate of 1½% per month after the due date.

   A reasonable attorney's fee for advising and representing a claimant on an overdue claim or action for an overdue claim shall be paid by the insurer if overdue benefits are recovered in an action against the insurer or if overdue benefits are paid after receipt of notice of the attorney's representation.

   Nothing in this section shall prohibit or limit any claim or action for a claim the claimant shall have against the insurer.

Section 2436 was enacted in its present form by P.L. 1977, ch. 357.

3. The earlier version of 24–A M.R.S.A. § 2436 read in full as follows:

   Claims made by a named or other person insured thereunder for payment of benefits under a policy of insurance against loss, delivered or issued for delivery within this State, are payable within 60 days of the date that the insurer receives reasonable proof of loss and amount of loss realized. Unless the insurer notifies the insured in writing within 60 days from the receipt of such proof that the fact or amount of loss is disputed, payments of claims are overdue if not paid within said 60 days. If the insurer disputes only part of the claim, the remainder of the claim is overdue if not paid within 60 days of receipt of proof of loss and amount of loss. Any part or all of the disputed part of the claim that is later supported by reasonable proof that is not further disputed is also overdue if not paid within 60 days after such proof is received by the insurer.

   If the insurer fails to pay such claims when due, the amount of the claim shall bear interest at the rate of 1½% per month after the due date.

   A reasonable attorney's fee for advising and representing a claimant on a claim or action for a claim shall be paid by the insurer if overdue benefits are recovered in an action against the insurer or if overdue benefits are paid after receipt of notice of the attorney's representation.

   This, the original version of section 2436, was enacted by P.L.1973, ch. 480.

The *Burne* decision depended in part upon a Statement of Fact attached to the 1973 bill that became 24–A M.R.S.A. § 2436 in its original form. That Statement of Fact, supplied by the Committee on Business Regulation, stated that "[t]he purpose of the new draft is to limit the bill to claims for first-party coverage." *See* 403 A.2d at 778. The Statement of Fact attached to the 1977 bill that became the present section 2436, L.D. 1247, 108th Me.Legis., 1st Reg.Sess. (1977), gives no indication that the legislature intended to change that basic limitation, which excludes life insurance. The 1977 Statement of Fact reads in its entirety: "This bill clarifies the requirements regarding timely payment of insurance claims."

There are also internal indications that no extension of section 2436 to cover life insurance was intended. Even though the 1977 amendment eliminated the language, "[c]laims made by a named or other person insured," that we found critical in the *Burne* case, that amendment introduced other limiting language in the same first sentence that has a comparable consequence in construing the statute: the 30-day payment period starts to run only after "ascertainment of the loss is made either by written agreement between the insurer and the *insured* or by filing with the *insured* of an award by arbitrators . . . ." (Emphasis added) The reasoning of *Burne* continues to apply.[4] Furthermore, the legislature has established a time period for payment of life insurance proceeds that is different from the payment period applicable to other types of insurance. The latter period, established by section 2436, is 30 days from proof and ascertainment of loss. On the other hand, the payment period for life insurance is established by 24–A M.R.S.A. § 2513 (1974) to be two months from receipt by the insurer of due proof of death. The original time period of section 2436 was

60 days, *see* n. 3 above, practically identical to the two-month period of section 2513. Subsequent amendments shortened the time period of section 2436 to 30 days, while leaving the two-month period of section 2513 for life insurance intact. We discern no legislative intent to treat life insurance and other kinds of insurance alike. As we remarked in *Burne*, 403 A.2d at 778, the wisdom of the legislature's distinctions is not for us to judge.

■ Even if section 2436 applied to life insurance, it would hardly help this plaintiff, for the section imposes penalties only for failure to pay an "undisputed claim." The Caverlys received oral notice that their claim was disputed when Foster and Ennis visited the Caverly farm shortly after Brainard's death. By then, and at all times thereafter, everyone knew the ground of FFLIC's dispute of the claim; namely, that the insurance policy had expired and had not been reinstated. In response, plaintiff argues that in order to be effective the notice of dispute must be in writing. However, section 2436 contains no such requirement: its second paragraph provides only that an insurer "may" dispute a claim by furnishing a written statement to the insured or his representative. That present language should be contrasted with the original form of section 2436, which did require written notice. *See* n. 3 above. The present permissive language gives an insurance company an option of either using a written statement in form and substance that the statute declares to be adequate or taking its chances with an oral notice of dispute that may or may not be found adequate in the course of later litigation.

The presiding justice ruled correctly that Depositors Trust was not entitled to the statutory interest and attorney fees provided by 24–A M.R.S.A. § 2436.

---

4. We reject plaintiff's argument that even if the first paragraph is read to apply only to casualty insurance, the balance of section 2436 can be read to apply to both life and casualty insurance. Every one of the four other sentence-paragraphs of the section contains a phrase, such as "a claim," "an undisputed claim," "an overdue claim," or "any claim," that for its identification and meaning requires a reference back to the first paragraph, which by its terms necessarily excludes life insurance. *See* n. 2 above.

## II. The cross-appeal.

### A. Objection to examination report as hearsay.

FFLIC, attacking the judgment on cross-appeal, argues that the Superior Court's admission in evidence of the physical examination report was error because the report was hearsay. We find no merit in this argument. The report was not "offered in evidence to prove the truth of the matter asserted" in it, and so it was not hearsay. M.R.Evid. 801(c). The report was offered to prove not that Brainard Caverly was in good health, but merely that he provided FFLIC with reasonable evidence of insurability. To lay the necessary foundation for admission of the report, it was sufficient merely to prove that it was the report of a physical examination made by a person designated for that purpose by FFLIC. The latter point was established by testimony of Brainard's wife, who was present at the time the physical examination was performed, and by testimony of FFLIC's agent Foster that he had directed Brainard to the nurse who performed the examination for the insurance company.

### B. Sufficiency of the evidence of estoppel.

FFLIC urges that there was insufficient evidence to support a verdict against it on the basis of estoppel, so that it was error for the presiding justice to instruct the jury on that count of the complaint. The insurance company also makes a related argument that the only conduct upon which estoppel could be based was that of the agent Foster and that therefore it was error for the court to grant a directed verdict for him but not for FFLIC. We reject those contentions. We do not reach, and therefore express no opinion on, the question whether a jury verdict against the principal on a respondeat superior theory may be attacked on appeal solely on the ground the presiding justice took the case away from the jury so far as the co-defendant agent was concerned. In any event, FFLIC's estoppel liability in the case at bar was not derivative from that of the agent Foster; its liability was its own and not solely that of a principal responsible for its agent's acts.

On this record the jury could well conclude that FFLIC was estopped not by what Foster did, but rather by the company's failure promptly to reinstate Brainard, while not warning him that he was not covered or that a physical examination would be needed. It was the receipt of the application for reinstatement and the collection of the overdue premium in combination with silence for an extended period that the jury may have found unreasonable. The insurance company sought to leave the risk with the Caverlys even while receiving and holding the premium; the jury could justifiedly have found it unreasonable for the insurance company to act thus, without telling the Caverlys that they were not protected—at least during an extended period of processing, which one of the FFLIC officials testified could have approached two months. An insurer's unreasonable delay in acting upon an application for a policy of insurance on which a premium has been paid is alone sufficient to estop the insurer from denying coverage, both because the insurer has sought to retain the premium without accepting the corresponding risk and because the insurer has significantly preempted the applicant from seeking coverage elsewhere. See O'Donovan v. Bankers Life & Casualty Co., 305 So.2d 643, 646 (La.App.1974); Lothrop v. Allstate Life Insurance Co., 62 Misc.2d 962, 310 N.Y.S.2d 631, 633–34 (1970); Funk v. Franklin Life Insurance Co., 392 F.2d 913, 917 (7th Cir. 1968); Kukuska v. Home Mutual Hail-Tornado Insurance Co., 204 Wis. 166, 235 N.W. 403 (1931).

Here, there was a delay of 25 days between the time that Brainard Caverly submitted his application for reinstatement along with payment of the overdue premium and the time that he was told a physical examination would be necessary. An official of FFLIC explained the various steps that the company went through in that period, and while some might find those steps reasonable, we cannot hold that a

rational jury, taking all factors into consideration, could not have found the delay to be unreasonable. *Cf. O'Donovan v. Bankers Life & Casualty Co., supra* (thirteen-day delay held to be unreasonable). The evidence tending to establish an estoppel against the insurance company was adequate to take that issue to the jury.

■ In any event, even if FFLIC should succeed in persuading us that the evidence of estoppel was inadequate to support a jury verdict on that ground, FFLIC would take nothing on its appeal. The jury returned a general verdict against the insurance company for the face amount of the life insurance policy on Brainard's life. The parties sought neither special verdicts under M.R.Civ.P. 49(a) nor a general verdict accompanied by answer to interrogatories under M.R.Civ.P. 49(b). Since on appeal we cannot know whether the jury decided for plaintiff on the contract theory or the estoppel theory or both, we must affirm if the jury's result was justified on either theory.[5] As stated over 50 years ago by this court in *London v. Smart*, 127 Me. 377, 378, 143 A. 466, 467 (1928):

> Where there are two or more counts in the declaration it is not necessary that the evidence should support all the counts for if the evidence is sufficient to support one good count a general verdict will stand.

Since, as we explain below, the jury could rationally have found facts supporting a verdict based on reinstatement of the insurance policy as a matter of contract law by the time of Brainard's death, the general verdict must be sustained on appeal on that ground, without even reaching the estoppel issue.

■ Under the terms of the reinstatement clause, following the form required by 24–A M.R.S.A. § 2512 (Supp.1981), reinstatement of a life insurance contract is not dependent on the insurer's acting on or accepting the application. Reinstatement is defined in terms of the actions of the insured, and once he has met his responsibilities the contract is reinstated as a matter of law. It is true that in this case the reinstatement form signed by Brainard Caverly sought to condition reinstatement on its being "approved at the Home Office of the Company." We join other courts in holding that this clause was invalid as a unilateral attempt by the insurer to modify the terms of the original contract without consideration. *See Thompson v. Northwestern Security Life Insurance Co.*, 44 N.C.App. 668, 262 S.E.2d 397, 401 (1980); *Bruegger v. National Old Line Insurance Co.*, 387 F.Supp. 1177, 1182 (D.Wyo.1975), *modified on other grounds*, 529 F.2d 869 (10th Cir. 1976).

Here, FFLIC did not receive the physical examination report at its home office until after Brainard Caverly had died. That fact, however, did not preclude the jury from finding that the insurance contract had been reinstated. The court correctly instructed the jury that FFLIC was required to be reasonable in evaluating what evidence of insurability was acceptable to it under the contract: the insured's obligation was to furnish reasonable evidence of insurability. *See Bruegger v. National Old Line Insurance Co., supra* at 1182; *Burnham v. Bankers Life & Casualty Co.*, 24 Utah 2d 277, 470 P.2d 261, 264 n. 6 (1970); *Funk v. Franklin Life Insurance Co., supra* at 917. The jury could have found that this requirement of the reinstatement provision was met on two occasions. First, the reinstatement application itself was in evidence and contained extensive medical information. It would not have been irrational for the jury to find that the application itself constituted reasonable evidence of insurability under the circumstances of the present case: only a year had passed since the policy was originally issued, and the original application involved two physical examinations; FFLIC's official Arnstein testified that the information on the application for reinstatement indicated no increase in risk;

---

5. As with the estoppel count, FFLIC's liability on the contract was independent of any liability that its agent Foster might have had. Foster was not a party to the contract; he signed the application for reinstatement, but only as a witness.

and FFLIC's agent Foster, who evidently knew Brainard and dealt with the Caverlys regularly on insurance matters, signed the application as a witness.

Second, if the information in the application were not itself enough, it was supplemented by the report of the physical examination. The jury was free to conclude that the report was reasonable evidence of insurability. The fact that Brainard died (from causes unrelated to his insurability) before the report made its way to FFLIC's home office is of no significance. The insured had furnished the necessary information to the person designated by FFLIC to receive it and had thereby fulfilled his contractual responsibility. Further, we approve the rule stated in *Bruegger, Funk,* and *Thompson, supra* : insurability is to be determined as of the date the application for reinstatement was made. That rule addresses the same concerns we noted above with respect to the estoppel claim: it prevents the insurer from having the advantage of the premium while accepting no risk of loss, and it avoids the problem of the insurer's exposing the applicant to a period of risk while reducing his ability to seek coverage elsewhere. The fact that the applicant dies after applying for reinstatement is not relevant unless as a practical matter it prevents him from performing all obligations placed upon him by the reinstatement clause of the contract. In this case the evidence supported a finding that Brainard satisfied all the terms of the contract before he died.

The entry is:

Both appeal and cross-appeal denied.

Judgment affirmed.

All concurring.