Charles L. McDANIEL, Plaintiff,

v.

**SIGNAL CAPITAL CORPORATION,**
Defendant.

**Civil Action No. H–95–3348.**

United States District Court,
S.D. Texas,
Houston Division.

Jan. 24, 1996.

484

Robert Allen Kouts, Houston, TX, for plaintiff.

Cecil M. Arnold, Dallas, TX, for defendant.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

Pending before the Court is **Plaintiff's Motion for Summary Judgment** (Doc. # 7) and **Defendant's Motion for Leave to Withdraw Defendant's Motion for Leave to Amend Answer** (Doc. # 22). For the reasons stated below, **Plaintiff's Summary Judgment Motion** is **GRANTED.**

### I. Factual Background

Trailmobile, Inc. ("Trailmobile") is Defendant, Signal Capital Corporation's ("Signal"),

predecessor in interest. Trailmobile extended $253,414.00 in credit to Plaintiff, Charles L. McDaniel ("McDaniel"), for the purchase of nine truck trailers in 1981. The loan was made in reliance upon a financial statement presented by McDaniel reporting his net worth as $2,600,000.00. Less than a year later, McDaniel filed for bankruptcy under Chapter 7 of the Bankruptcy Code, claiming no non-exempt assets. *See* Defendant's Response to Plaintiff's Motion for Summary Judgment ("Defendant's Response"), Exh. B, at 5. Trailmobile objected to McDaniel's discharge and filed an action in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, seeking a judgment against McDaniel for $99,661.58 for the deficiency on McDaniel's debt, accrued interest, attorney's fees, and court costs. First Amended Complaint to Determine Dischargeability, at 5 (Defendant's Response, Exh. B).

The case was tried on May 6, 1985, although the issue of attorney's fees was not heard until May 13, 1988.[1] The Bankruptcy Court announced its decision at the close of argument in 1985, finding that the financial statement that McDaniel had given to Trailmobile was materially misleading, and that Trailmobile had relied upon it in extending McDaniel $250,000.00 in credit. According to the docket sheet, the Court also held that McDaniel's debt to Trailmobile was non-dischargeable. Defendant's Response, Exh. C. These findings were reduced to writing in a judgment, signed by the Bankruptcy Court on June 5, 1985, in which the Bankruptcy Court held that McDaniel's outstanding debt was not discharged and Trailmobile was awarded a judgment for $99,651.58 ("Written Judgment"). Defendant's Response, Exh. A, at 2. Signal did not try to execute on the judgment until June 6, 1995, ten years plus one day after the Written Judgment was signed by the Bankruptcy Court. Defen-

---

1. The record does not reflect why the issue of attorney's fees was not decided by the Bankruptcy Court for three years following trial on the merits. In its written judgment, the Court generally "reserve[d] the right to make further orders that may be necessary." Bankruptcy Court Judgment signed June 5, 1985, at 2. The Bank-

ruptcy Court decided the issue of attorney's fees on May 13, 1988, the same date that it heard McDaniel's motion for a new trial. The Court denied Trailmobile's request for attorney's fees and denied McDaniel's motion for a new trial. Defendant's Amended Original Answer, at 1.

dant's Amended Original Answer ("Defendant's Answer"), at 2.

## II. *Discussion*

Plaintiff requests a declaration pursuant to 28 U.S.C. § 2201 that federal judgment liens on Plaintiff's property have ceased to exist,[2] and that enforcement of the federal judgment is time barred by state law, as made applicable under Fed.R.Civ.P. 69.[3] Plaintiff also seeks an Order pursuant to Fed.R.Civ.P. 62(f) permanently staying execution and further enforcement of the judgment, in addition to attorney's fees incurred in this proceeding.

■■■ Under Texas law, if a writ of execution is not issued within ten years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant and execution may not be issued on the judgment unless it is revived. Civ.Prac. & Rem.Code § 34.001(a) (West 1986). Further, if execution has not issued within 12 months after the date of the rendition of a judgment in a court of record, the judgment may be revived by *scire facias* or by an action of debt brought not later than 10 years after the date of the rendition of the judgment. Civ.Prac. & Rem.Code § 31.006 (West 1986).[4]

McDaniel argues that the 1985 judgment which Trailmobile won against him fell dormant ten years after it was rendered and, never having been revived, the ten-year limitations period on the judgment ran on May 6, 1995, one month before Signal sought a writ of execution. Signal argues that "final" judgment was not rendered until May 17, 1988, when the Bankruptcy Court denied Trailmobile's motion for attorney's fees and, therefore, the ten year limitations period on the judgment had not run by the time a writ of execution was sought on June 6, 1995.

■■■ Defendant argues that, because the Bankruptcy Court "reserve[d] the right to make further orders that may be necessary," its Written Judgment was not final until all issues raised in Trailmobile's complaint, particularly attorney's fees, were ultimately dis-

---

**2.** Pursuant to 28 U.S.C. § 1962, a federal judgment lien ceases to be a lien on a judgment debtor's property in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in the state in which the judgment is rendered. Under Texas law, a judgment lien ceases to exist if the judgment becomes dormant during the ten year period following the date of recording and indexing the abstract. Tex.Prop.Code § 52.006 (Vernon 1995).

**3.** Pursuant to Fed.R.Bankr.P. 7069, Fed.R.Civ.P. 69 applies in adversary proceedings. Rule 69(a) provides as follows:

[P]rocess to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or a successor in interest when the interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules

or in the manner provided by the practice of the state in which the district court is held.

**4.** Section 31.006 was amended in September 1995 to provide that "[a] dormant judgment may be revived by scire facias or by an action of debt brought not later than the second anniversary of the date that the judgment becomes dormant." (West Supp.1996). This amendment "applies only to an action to revive a judgment brought on or after December 1, 1996. An action brought before December 1, 1996 is governed by the law in effect at the time the action was brought, and that law is continued in effect for that purpose." *Id.* Although the amendment seemingly would allow Defendant to revive its judgment against McDaniel, the settled rule is that the legislature may not revive a time-barred cause of action by amending a statute of limitations to provide for a longer limitations period. Once a claim is barred, the right to rely on a statute of limitations is vested. *Mann v. Jack Roach Bissonnet, Inc.*, 623 S.W.2d 716, 718 (Tex. Civ.App.—Houston [1st Dist.] 1981, no writ); *Southern Pac. Transp. Co. v. State*, 380 S.W.2d 123, 127 (Tex.Civ.App.—Houston 1964, writ ref'd). Plaintiff's right to rely on the statute of limitations vested on or before June 5, 1995. *See infra* at 487. Therefore, contrary to Defendant's argument at the Court's November 6, 1995, hearing, Defendant may not rely on the amendment to Section 31.006 to revive a claim which was

posed of by the Court.[5] The Court need not reach this issue, however, because whether a judgment is interlocutory or final does not determine whether or when it was "rendered." "Final" and "rendered" are distinct terms under Texas law and Plaintiff's arguments attempt erroneously to merge the two.

■ *Texas Law.*—"A rendition of judgment is the pronouncement by the trial court of its conclusions and decision upon the matters submitted to it for adjudication; such conclusions and decisions may be oral or written, and judgment is rendered when the decision is officially announced either orally in open court or by a memorandum filed with the clerk." *Arriaga v. Cavazos,* 880 S.W.2d 830, 833 (Tex.App.—San Antonio 1994, no writ), *citing Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 58 (Tex.1970). "A judgment is in fact rendered whenever the trial judge officially announces his decision in open court." *Arriaga v. Cavazos,* 880 S.W.2d at 833. "Rendition is distinguishable from the entry of judgment which is a purely ministerial act by which judgment is made of record and preserved." *Id.* "Signing" occurs when the judge actually signs the written draft of the judgment, and this is usually deemed to be the date of rendition for purposes of calculating appellate time limits. *Burrell v. Cornelius,* 570 S.W.2d 382, 383 (Tex.1978); Tex. R.Civ.P. 306a. "Entry" refers to the clerk's act of placing a copy of the judgment in the official record of the court. *Id.* at 384.

Central to this dispute is the date that judgment was rendered in favor of Trailmobile. Plaintiff contends that the Bankruptcy Court's judgment was rendered on May 6, 1985, the day that *Trailmobile v. McDaniel* was tried. Plaintiff's summary judgment evidence supports this argument, although a transcript of the Bankruptcy Court proceeding has not been submitted to this Court. In particular, the May 6, 1985 entry on the docket sheet ("Trial; debt held not dischargeable") suggests that the Bankruptcy Court officially announced its decision in open court and thereby rendered a judgment in favor of Trailmobile. Defendant concedes as much, admitting that, on May 6, 1985, "... the Court orally held that the debt of Charles McDaniel was non dischargeable." Defendant's Answer, at 1. However, Defendant contends (i) that the judgment was not "rendered" until June 5, 1985, when the Court reduced its oral findings to a signed, written judgment and (ii) that, in any event, both decisions were interlocutory. *Id.*[6]

Based on the docket entry and Defendant's own characterization of the trial, the Bankruptcy Court orally rendered a decision on the matter submitted to it for adjudication (*i.e.,* the dischargeability of McDaniel's debt to Trailmobile) on May 6, 1985. The Written Judgment signed on June 5, 1985, simply memorialized the Court's earlier findings.[7]

■ A judgment under Texas law may be rendered as to one issue in a case despite

time-barred prior to the amendment's enactment or effective date.

5. Under Texas law, a final judgment is one that disposes of all parties and issues in a lawsuit. *Houston Health Clubs v. First Court of Appeals,* 722 S.W.2d 692, 693 (Tex.1986). "When a judgment ... is rendered and entered in a case regularly set for a conventional trial on the merits, ... it will be presumed for appeal purposes that the court intended, and did, dispose of all issues made by the pleadings between such parties." *Id., quoting North East Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 898 (Tex.1966). However, a judgment is not final when future action by the court is necessary. *Ambrose v. Mack,* 800 S.W.2d 380, 383 (Tex.App.—Corpus Christi 1990, writ denied).

6. The disagreement about precisely when Judge Ford rendered his decision stems, in part, from the ambiguous language of the Written Judgment, the opening paragraph of which reads:

On the 6th day of May, 1985, this action came on for trial before the Court, Honorable John C. Ford, Bankruptcy Judge, presiding. The issues having been tried and a decision being duly rendered.

It is not clear from the second sentence whether judgment was rendered on May 6, 1985, when the case was tried, or on June 5, 1985, when the judgment was signed.

7. Whether judgment was rendered on May 6 or June 5 is academic because Defendant's writ of execution was not sought within the ten-year limitations period of the later date (June 5, 1995) and the judgment is still time-barred. That Judge Ford's judgment was not entered on the Bankruptcy Court's docket until June 10, 1985, does not bolster Defendant's position. Texas law is clear regarding the distinction between the rendition and entry of judgments, hence Defendant may not argue that judgment was not rendered until June 10, 1995, which would bring it within the limitations period.

the fact that other issues have not yet been decided by the court. *See Comet Aluminum Co., Inc. v. Dibrell,* 450 S.W.2d 56, 58 (Tex. 1970). Therefore, regardless of whether judgment on the debt was rendered on May 6, 1985, or June 5, 1985, the Court finds that the ten-year limitations period had expired by the time that Defendant sought a writ of execution on June 6, 1995.[8] The Bankruptcy Court's three-year delay in rendering judgment on attorney's fees does not change this result.

■ *Defendant's Authorities.*—Notwithstanding the foregoing, Defendant cites two Seventh Circuit cases for the proposition that a "rendered" judgment means a "final" judgment, and that a jury verdict must resolve all issues in order for a judgment to be "final." Neither decision is particularly instructive, however, because the Seventh Circuit did not hold or even address the precise argument that Defendant advances here, *i.e.,* that the appellate status of a judgment (whether interlocutory or final) determines its date of rendition.[9]

In further support of its argument that "a rendered judgment means a judgment that has attained appealable perfection," Defendant cites *In re Hurley Mercantile Co.,* 56 F.2d 1023 (5th Cir.1932), *cert. denied,* 286 U.S. 555, 52 S.Ct. 580, 76 L.Ed. 1290 (1932), for the proposition that a "rendered judgment" means a final judgment entered on the court record by the clerk. The Court finds this argument unpersuasive. In *In re Hurley,* the Fifth Circuit found that, by inter-

changeably using the terms "entry" and "rendition," Congress had been technically inaccurate in calculating appellate timetables. Therefore, the Court looked beyond the language of individual statutes and determined that congressional intent was to begin all appellate timetables at "the perfecting of the judgment or order as final by its filing with the clerk." *Id.* at 1025.

Defendant argues, on the basis of *In re Hurley,* that the Court should read a similar requirement into Sections 34.001(a) and 31.006 of the Civil Practice and Remedies Code, and hold that Trailmobile's judgment against McDaniel was not "rendered" on May 6, 1985 (the date of the trial), but on May 13, 1988, when attorney's fees were denied and (according to Defendant) the judgment became appealable. However, Defendant offers neither policy reasons nor authority in support of his interpretation of "rendition." Nor is it supported by the language of the Texas Civil Practice and Remedies Code. Nowhere does that Code or other Texas law cited to the Court suggest that a rendered judgment means a final judgment or a judgment that has attained appealable perfection. Thus, the Court will not depart from the unambiguous meaning of "rendition" under Texas law and impose upon a statute a meaning unintended by its drafters. *See Boyce v. Greenway,* 71 F.3d 1177, 1179–80 (5th Cir.1996), *quoting Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) ("[t]here is, of course, no more persuasive evidence of the purpose of a statute than the words by which

---

8. The computation of limitations periods is governed by Section 311.014 of the Texas Government Code, applicable to both Sections 34.001(a) and 31.006 of the Civil Practice and Remedies Code. Section 311.014 provides:

   (a) In computing a period of days, the first day is excluded and the last day is included.

   (b) If the last day of any period is a Saturday, Sunday, or legal holiday, the period is extended to include the next day that is not a Saturday, Sunday, or legal holiday.

   (c) If a number of months is to be computed by counting the months from a particular day, the period ends on the same numerical day in the concluding month as the day of the month from which the computation is begun, unless there are not that many days in the concluding month, in which case the period ends on the last day of that month.

9. In *Harris v. Goldblatt Bros.,* 659 F.2d 784 (7th Cir.1981), the court found that, where a judgment is rendered with respect to only part of the relief sought by plaintiffs and where consideration of attorney's fees is explicitly reserved, the judgment is not final. *Id.* at 786. Similarly, in *Funk v. Franklin Life Ins. Co.,* 392 F.2d 913 (7th Cir.1968), the court found that entry of judgment on the verdict for the plaintiffs was not a final appealable order because, by agreement of the parties, the amount of recovery was not determined until a week after the verdict. Although both cases hold that a judgment is not final until all issues have been decided conclusively, neither holds, contrary to Defendant's argument, that a judgment has not been rendered unless it has achieved "appealable perfection."

the legislature undertook to give expression to its wishes").[10]

## III. Attorney's Fees

■ Plaintiff seeks attorney's fees incurred in this proceeding pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Section 2202 provides that "necessary or proper relief based on a declaratory judgment ... may be granted against any adverse party whose rights have been determined by such judgment," and thus the award of attorney's fees is entrusted to the sound discretion of the trial court. *Texas Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1574 (5th Cir.1990). Moreover, Section 2202 does not by itself provide statutory authority to award attorney's fees that would not otherwise be available under state law in a diversity action. *Mercantile Nat'l Bank at Dallas v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir.1988).

Plaintiff has not argued that attorney's fees should be based on Defendant's bad faith in opposing its motion for summary judgment. Nor does the Court find Defendant's opposition vexatious. Plaintiff's motion raises interesting questions of law, the answers to which, as suggested by the length of this opinion, were not obvious. Therefore, although the Court awards declaratory judgment in favor of Plaintiff, it declines to award attorney's fees under Section 2202.

## IV. Conclusion

Pursuant to Sections 34.001(a) and 31.006 of the Civil Practice and Remedies Code, the applicable limitations period in this case is ten years. Even if, for purposes of calculating the limitations period, the Bankruptcy Court's date of signing its Written Order—June 5, 1985—is considered the date of rendition, the limitations period for enforcement of the judgment ended on June 5, 1995, which was neither a Saturday, a Sunday nor a legal holiday. Therefore, the Court finds that enforcement of the Bankruptcy Court judgment by this suit commenced on June 6, 1995 is time-barred under Texas law. It is therefore

ORDERED that, pursuant to 28 U.S.C. § 2201, the Bankruptcy Court judgment ceased to be a lien on Plaintiff's property as of the end of June 5, 1995. **Plaintiff's Motion for Summary Judgment** is therefore **GRANTED,** and execution and further enforcement of the Bankruptcy Court Judgment is permanently **STAYED.** It is further

ORDERED that Plaintiff's request for attorney's fees is **DENIED** without prejudice to Plaintiff's seeking a future award if other authority is applicable.

---

10. *Knox v. Long,* 152 Tex. 291, 257 S.W.2d 289 (1953), *overruled on other grounds by Jackson v. Hernandez,* 155 Tex. 249, 285 S.W.2d 184 (1955), suggests that, in certain limited circumstances, a judgment has not been "rendered" although an order has been signed by the court. However, *Knox* does not bolster Defendant's argument because the decision is clearly limited to its facts. In *Knox,* a judge signed a stack of 182 docket sheets stamped "dismissed for want of prosecution." After signing the 182 docket entries, the judge asked the clerk if any of the cases were still alive and should not be dismissed. The clerk identified two cases, and their docket sheets were set aside not to be dismissed. When the 182 docket sheets were delivered to the clerks' office, an order of dismissal was erroneously issued for 181 cases, which was subsequently corrected by the judge. As of the moment the judge signed the orders, the Court found that no judgment had

been rendered in any of the cases, "for it appears beyond doubt that although the docket entries had been signed, the entries were provisional and the judge was still in control of them with no intention of permitting any of them to become judgments of the court until he first satisfied himself that none of the cases were active." *Id.* at 296. Once the docket sheets had been delivered to the clerk's office, the Court found that, although judgment had been rendered dismissing 180 cases, judgment had not been rendered dismissing the two active cases previously set aside by the judge.

*Knox* is distinguishable from the case at bar. There is no suggestion in the record that the Bankruptcy Court's Written Judgment does not accurately reflect the Court's oral findings or that the Written Judgment was not intended to be determinative on the issues the Court purported to decide.